**In the Matter of Larry W. DRAKE, Carolyn D. Drake, Debtors.**

**Herbert HURLBERT and Ruth Hurlbert, husband and wife, Plaintiffs,**

v.

**Larry W. DRAKE and Carolyn D. Drake, husband and wife, Defendants.**

**RED BARN INC., an Idaho Corporation, Plaintiff,**

v.

**Larry W. DRAKE and Carolyn D. Drake, husband and wife, fdba Automotive Liquidators, Defendants.**

**Bankruptcy Nos. 80–0042, 80–0047.**

United States Bankruptcy Court, D. Idaho.

June 25, 1980.

**150**

Charles W. Fawcett, Boise, Idaho, for defendants.

Wes L. Scrivner, Boise, Idaho, for plaintiff, Hurlbert.

Charles D. Coulter, Boise, Idaho, for plaintiff, Red Barn.

## MEMORANDUM DECISION FINDINGS OF FACT AND CONCLUSIONS OF LAW

M. S. YOUNG, Bankruptcy Judge.

Because both of the above entitled proceedings involve essentially the same factual and legal problems, I am combining them in this Memorandum Opinion and Decision. In both cases the plaintiffs seek to have certain indebtedness owed to them by defendants declared nondischargeable obligations pursuant to Section 523(a)(2) and (4) of the Bankruptcy Code.

Defendant was engaged in a business under the name of Automotive Liquidators. In this business he received motor vehicles on consignment from private individuals and agreed to sell them to third parties at a fixed price. Upon sale of a vehicle to a buyer, he was to pay the consignor the agreed price. If he was able to sell the vehicle for a sum greater than the agreed price to the consignor, this was his profit. No written consignment agreement was executed. The only written documents in the transaction were a motor vehicle odometer report required by law and a receipt which simply stated that defendant owed the owner a stipulated amount of money on the car which was to be sold.

Defendants' business was failing and the defendant was insolvent for some period of time prior to the time he filed his voluntary petition for relief in the Bankruptcy Court on December 10, 1979. For at least six months prior to the time he ceased to do business on October 19, 1979, he had been "rolling over" funds received on sale of consigned cars. That is, as he sold a particular car, he would use the funds received to pay off his obligations to prior consignors. He did not segregate the funds received on sale of vehicles or maintain a trust account, but placed them in his general business bank account.

That, at the time of filing his petition in this court, he was unable to pay consignors for several vehicles which had been sold by him prior to his bankruptcy. Two of these consignors are the plaintiffs herein.

The plaintiff Hurlbert had delivered a vehicle to defendant on October 1, 1979. This car was sold to a third party. Part of the purchase price was a trade-in vehicle. The plaintiff approved of this arrangement and received a check from defendant for

the difference between the allowance on the trade-in and the agreed sale price to him. He was to receive the balance of the sums due him upon sale of the trade-in. Defendant's check to plaintiff for the portion of the purchase received by him in the amount of $1,065.00 did not clear the bank. Within a week, defendant closed his business.

In the case of the Red Barn, Inc., it consigned a truck and trailer to defendant in May of 1979, which vehicles after a considerable period of time were sold to a third party who paid the purchase price to the defendant. There was a lien on the vehicle which was not paid by defendant nor did defendant pay plaintiff the monies received from the sale so he could pay the lien and clear title. This plaintiff eventually repurchased the vehicles from the defendant's buyer in order to regain possession of the truck, all to his damage in the amount of $2,850.00.

All of the arrangements between plaintiffs and defendant were informal and oral. There was no specific agreement as to how the money received upon sale of vehicles by defendant to third parties was to be handled. Plaintiffs assumed that defendant would pay them for their vehicles from these funds at the time he made the sale to third parties, but no explicit agreement to this effect existed.

Defendant did not divert the funds to any particular consignor and took no part of the sale proceeds for his personal use except minimal living expenses.

Based on these facts plaintiffs contend that the defendant was in a fiduciary relationship to them and that his failure to pay the sums received on sale of their vehicles to plaintiffs amounted to a defalcation or embezzlement. They also contend that debtor obtained their vehicles by fraudulent misrepresentations.

█ I conclude that the evidence does not sustain a finding that defendant obtained any money or property by false pretenses. The preponderance of the evidence does not establish that defendant, at the time he took plaintiffs' vehicles on consignment, did not intend to pay plaintiffs when the vehi-

cles were sold. Defendant was similar to many other insolvent business men who with unrealistic hope of recovery, continue to receive merchandise for resale while insolvent. Such a factual situation does not amount to fraud. There is nothing in evidence indicating that defendant received plaintiffs' vehicles with the then existing and deliberate intent to convert the proceeds of consigned vehicles, to any purpose other than the vain hope of continuing in business.

The insufficient fund check issued to plaintiff Hurlbert in payment of his antecedent debt to plaintiff does not amount to fraud. See *Collier on Bankruptcy* (15th Ed.) § 523.08(4), footnote 16, cited in defendant's brief on file herein. No property or money was obtained as a result of the insufficient check. The misrepresentation was subsequent to the obtaining of the motor vehicles from plaintiff Hurlbert, and was merely an attempt to pay an antecedent debt. See also *State v. Campbell*, 97 Idaho 331, 543 P.2d 1171, (1975), cited in defendant's brief.

█ Whether or not defendant was in a fiduciary relationship to the plaintiffs under this set of circumstances represents a more difficult legal question. Although plaintiffs and defendant were in a "sale and return" relationship under the provisions of Section 28–2–326 Idaho Code, so that defendant could pass title to third parties pursuant to Section 28–2–403(2) Idaho Code, I conclude that as between the plaintiffs herein and defendant, their relationship was one of principal and agent. Defendant was to sell the consigned vehicles as consignor's agent. I therefore look to the law of agency to determine the obligations of defendant to plaintiffs. Although the Supreme Court of the State of Idaho in the case of *State v. Compton*, 92 Idaho 739, 450 P.2d 79, (1968), held that a consignment arrangement would sustain an embezzlement charge, I conclude that the law of bankruptcy is to the contrary. An agency relationship does not create a fiduciary relationship sufficient to bar a discharge on the ground of defalcation or embezzlement by an agent. If there is an express agreement that the purchase price received from the

sale of consigned property is to be held in trust, separate and apart, then and only then is a fiduciary relationship in the bankruptcy sense created.

The case law in bankruptcy is almost unanimous in holding that funds held by agents, bailees, brokers, factors, partners, or other persons does not create a fiduciary relationship under the bankruptcy law. See *3 Collier on Bankruptcy*, (15th Ed.), Section 523.14 cited by defendant in his brief.

Likewise, see Section 523.14(3) stating that embezzlement does not result from a factual situation of type involved in this case. Plaintiffs are simply unpaid creditors of defendant.

I therefore find for defendant in both cases. This document is adopted as my Findings of Fact and Conclusions of Law in each case.

Counsel for defendant may submit a formal Judgment for each case.