**In re Michael O. DAWSON, Debtor.**

**DL&B OIL CO., Plaintiff,**

v.

**Michael O. DAWSON, Defendant.**

**Bankruptcy Nos. 80 B 16113, 81 A 0540.**

United States Bankruptcy Court,
N. D. Illinois, E. D.

Jan. 4, 1982.

Steven Bonner, Chicago, Ill., for debtor.

Francis E. Goodman, Chicago, Ill., for plaintiff.

## MEMORANDUM

FREDERICK J. HERTZ, Bankruptcy Judge.

This cause comes to be heard on the complaint to determine dischargeability of a debt under 11 U.S.C. § 523(a) by DL&B Oil Co. A trial was held on September 23 and 24, 1981. All parties were given an opportunity to submit supporting memoranda of law.

## I

### FACTS

Michael O. Dawson was engaged by DL&B Oil Co. some time in 1975 as an employee who pumped gasoline at its main business at 440 W. 87th Street. He continued in that employment for a period of time until the end of 1975 when he was offered and accepted a position whereby he would take over the premises belonging to DL&B Oil Co. at 71st Street and Indiana and receive its gasoline, unlock its pumps, distribute that gasoline to ultimate consumers by himself or through people chosen by him, collect the money which belonged to DL&B Oil Co., and to deliver the money to DL&B, as collected, or on an every other day basis.

Michael O. Dawson was trusted with the premises at 7059 S. Indiana (hereinafter called "station"). He was "trusted agent" of DL&B and was paid a commission on sales at the rate of four cents per gallon. From the latter part of 1975 through June of 1977 memoranda were made, reflecting the money belonging to DL&B Oil Co., taxes, and that which Dawson claimed for commission and expenses.

Michael Dunn has been the president of plaintiff since 1978. During the period in question, 1975 through 1977, he was a station manager in charge of pumps. Debtor was to deliver the money he collected to Dunn and was entitled to a commission plus expenses at the end of each week. Receipts for expenses were required but these were relatively minor. Both parties testified that Dawson was not to keep the money for any lengthy period of time. He was to make deposits on a daily basis or when reasonable. Dawson acknowledged that the funds he collected in fact belonged to DL&B Oil Co. He was not authorized to deduct specifically his four cents a gallon commission, but could with the acquiescence of Michael Dunn retain out of his last deposit for a week or like period that which represented a reimbursement of expenses and that which represented his commission. All the rest of the funds had either been deposited with DL&B or would be deposited when the commission was removed. Thus, Dawson was required to give all of the funds collected to DL&B Oil Co. and thereafter remove his commission or receive his commission from DL&B Oil Co.

Dunn collected funds from Dawson based upon readings from the pumps every couple of days. When he checked the pumps he made a tally in a spiral notebook which he kept in his possession. In 1975 and 1976 there were no discrepancies in the debtor's account. In March 1977, after alleged shortages in payments, the station was closed and a summary was prepared by Dunn shortly thereafter. Dunn tallied both the plaintiff's and the defendant's books, which were in Dawson's possession. Dawson never made any entries or any changes in the plaintiff's books.

Plaintiff's books indicated a shortfall of $9,901.42. Defendant said that there was a bookkeeping problem or the funds were at his house. The daily receipts were about $1000. Therefore $9000 would be approximately 9 days' receipts. Dunn told his father, who was then president of DL&B Oil Co. of the large deficiency. Mr. Dunn's father directed his associate, a Mr. Bohl, to close the station. No part of the claimed deficiency was ever recovered, except some $450 by wage garnishment.

## II

The relevant exception to discharge urged by the plaintiff appears in § 523

entitled "Exceptions to discharge" and provides that a discharge under Section 727, 1141 or 1328(b) of Title 11 does not discharge an individual debtor from any debt:

"for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" [11 U.S.C. § 523(a)(4)]

The predecessor of this section appears at § 17(a)(4) of the old Bankruptcy Act which provides that petitioner's debts were nondischargeable if they:

were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity. [former 11 U.S.C. § 17(a)(4)]

Both the current section invoked by plaintiffs and its predecessor require that a debtor be in a fiduciary capacity if a debt created by fraud or defalcation is sought not to be discharged.

*Chapman v. Forsyth, et al.,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844) held that "fiduciary capacity" as used in the bankruptcy statute requires an express trust, and that unless there be some additional fact, § 17(a)(4) does not apply to frauds of agents. *Chapman,* 43 U.S. (How.) 202, 207, 11 L.Ed. 236. The issue certified to the court in *Chapman* was:

Whether a commission merchant and factor, who sells for others [is] indebted in a fiduciary capacity within the act, provided he withholds the money received for property sold by him, and which property was sold on account of the owner and the money received on the owners's account. [*Chapman,* 43 U.S. (2 How.) 202, 206–207, 11 L.Ed. 236]

The Court held:

If the act embraces such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a

disregard of a trust. But this is not the relation spoken of in the first section of the act ...

The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act ...

In answer to the second question, then, we say, that a factor, who owes his principal money received on the sale of his goods, is not a fiduciary debtor within the meaning of the act. [*Chapman,* 43 U.S. (2 How.) 202, 208, 11 L.Ed. 236]

Accord *Neal v. Clark,* 95 U.S. 704, 24 L.Ed. 586 (1877); *Hennequin v. Clews,* 111 U.S. 676, 4 S.Ct. 576, 28 L.Ed. 565 (1883); *Noble v. Hammond,* 129 U.S. 65, 9 S.Ct. 235, 32 L.Ed. 621 (1888); and *Upshur v. Briscoe,* 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1890).

The holding in *Chapman* was extended in *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). *Davis* involved an automobile dealer who had entered into a "trust receipt" financing arrangement with a lending company. His failure to turn over the proceeds from the sale of a motor vehicle held under a trust receipt precipitated suit for conversion by the lender. After reviewing the decisional history of the *Chapman* rule, Justice Cardozo stated:

It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto ... Was petitioner a trustee in that strict and narrow sense?

We think plainly he was not, though multiplicity of documents may obscure his relation if the probe is superficial. The only writing at all suggestive of a trust is the one that is characterized as a trust receipt. What effect would be given to it if it stood alone, there is no occasion to consider. It does not stand alone, but is a member of a group which must be read with a collective meaning ... The resulting obligation is not

turned into one arising from a trust because the parties to one of the documents have chosen to speak of it as a trust. [*Davis*, 293 U.S. 328, 334, 55 S.Ct. 151, 154, 79 L.Ed. 393]

In the instant case the mere fact that the debtor is conceded to have been a "trusted agent" does not bring him within the definition of a trustee in that strict and narrow sense used in the Code.

The issue of whether operators of service stations who fail to turn over money received for their principals are violating a "fiduciary" duty within its meaning in the bankruptcy acts has been decided by several courts. *In the Matter of Walker*, 7 B.R. 563, 7 B.C.D. 68 (M.D.Ga., 1980); *In Re Williams*, 7 B.C.D. 45 (W.D.Va., 1980); *In Re Lambert*, 5 B.C.D. 804 (D.C.W.D.Va., 1979).

The Court in *Walker* found as a conclusion of law that "a service station manager, even though he has the responsibility of collecting the proceeds of sales from the station, accounting therefor and depositing cash amounts thereof, is not a fiduciary . . . The relationship was one which might lead to a trust implied by law, but that is less than is required by the statute. See Collier on Bankruptcy, Volume 3, Para. 523.14(c) (15th ed.)". *Walker*, 7 B.R. 563, 564.

The Court in *Williams* also involving a service station manager, found as a conclusion of law that "A commission merchant has been held not to qualify under § 17(a)(4) as acting in a fiduciary capacity". *Royal Indemnity Co. v. Sherman*, 124 Cal. App.2d 512, 269 P.2d 123 (1954); *Emery & Kaufman, Ltd. v. Heyl*, 227 La. 616, 80 So.2d 95 (1954), 8 Remington on Bkcy. (Henderson Ed.) § 3364, p. 246; *Crawford v. Burke*, 195 U.S. 176, 189, 25 S.Ct. 9, 11, 49 L.Ed. 147, 160 (1904). *Williams*, 7 B.C.D. 45, 47. Further, the court in *Williams* held that absent allegation and proof of "larceny", debts of a commission merchant arising from receipts are dischargeable under 11 U.S.C. § 523(a)(4). *Williams*, 7 B.C.D. 45, 48.

In the instant case no allegation of either larceny or embezzlement was made by the plaintiffs. Furthermore, proof by clear and convincing evidence of all the elements for either tort was not elicited. This court therefore is limited to the issues of whether debtor engaged in fraud or defalcation while acting in a fiduciary capacity.

The District Court in *Lambert* affirmed the judgment of the Bankruptcy Court discharging the debt of the debtor-station manager to A. T. Williams Oil Co., the plaintiff. Analyzing § 17(a)(4) of the Bankruptcy Act, the *Lambert* court construed the term fiduciary narrowly, consistent with *Davis v. Aetna Acceptance*, 293 U.S. 328 at 333, 55 S.Ct. 151 at 153, 79 L.Ed. 393 (1935). *Lambert*, 5 B.C.D. 804, 805. See also: *In the Matter of Wise*, 6 B.R. 867, 7 B.C.D. 131 (M.D.Fl., 1980). Manager of gas station selling gas on consignment. *In the Matter of Drake*, 5 B.R. 149, 6 B.C.D. 662 (D.Id., 1980). Debtor car dealer selling cars on consignment. *In the Matter of Great Oak Farms, Inc.*, Bk. No. H–79–542, Slip Opinion (D.Cn., 1980). Debtor operating milk and convenience store failed to deliver receipts for lottery tickets to State. Division of Special Revenue, State of Connecticut, alleged fiduciary relationship imposed by statute.

 This court interprets the qualifying terms "fiduciary duty" to require proof of a technical trust between the agent and principal, before a debt due and owing between them can be found non-dischargeable. The facts in the instant case do not demonstrate such a relationship and therefore judgment for the debtor, Michael O. Dawson, is hereby entered. Counsel will prepare an order consistent with this judgment within five days.