In re Morris Evan ADKISSON, d/b/a K–Town Market, also formerly d/b/a Central Ave. Paint & Decoring, Debtor.

VOLUNTEER STATE OIL CO., Plaintiff.

v.

Morris Evan ADKISSON, Defendant.

Bankruptcy No. 3–82–00825.

Adv. No. 3–82–0690.

United States Bankruptcy Court,
E.D. Tennessee.

Jan. 25, 1983.

Charles E. Rader, Knoxville, Tenn., for plaintiff.

Leon Steinberg, Knoxville, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

Plaintiff Volunteer State Oil Company alleges the nondischargeability of a debt arising from fraud or defalcation while the debtor was acting in a fiduciary capacity. 11 U.S.C.A. § 523(a)(4) (1979).[1] Trial was held November 26, 1982.[2]

### I

Volunteer State Oil Company (Volunteer) and the debtor entered into a Commission Marketing Contract (Contract) on April 30,

1. A discharge ... does not discharge an individual debtor from any debt—

   .       .       .       .       .

   (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny .... 11 U.S.C.A. § 523(a)(4) (1979).

2. Initially, plaintiff also sought denial of the debtor's discharge, 11 U.S.C.A. § 727(a)(3) (1979) (failure to keep books and records). Objections to discharge were overruled at conclusion of the proof. See Order entered December 7, 1982.

1977. At that time the debtor was operating a convenient and fast food store with self-service gasoline pumps. The purpose of the Contract (Ex. 2) was to provide for the sale of gasoline and motor fuel products which Volunteer undertook to place on the premises occupied by the debtor. Paragraph 2 of the Contract provides that—

> Title to all gasoline placed in said equipment and/or motor fuel products on said premises by [Volunteer] shall remain in [Volunteer], until such gasoline and/or motor fuel products is sold by the [debtor] to retail customers in the usual course of business. It shall be [debtor's] responsibility to account to [Volunteer] for all inventories of gasoline and/or motor fuel products supplied by or to [debtor].

Paragraph 9 of the Contract states in part—

> The [debtor] further agrees that he will hold in trust for the use and benefit of [Volunteer], and not otherwise, for [Volunteer] all money, checks, and other things of value received by him from the sale of [Volunteer's] gasoline and/or motor fuel products, and agrees that all money, checks, and other things of value so received by him shall be deposited to [Volunteer's] account in a bank designated by [Volunteer] at least once every 24 hours. If such deposits are made during banking hours, the [debtor] agrees to secure and deliver to [Volunteer] a duplicate deposit slip evidencing each deposit and to deliver same to [Volunteer]. The [debtor] further agrees that he will daily deliver to [Volunteer] a full and completed daily report of all sales made during the preceeding (sic) 24 hours, accounting for all funds and merchandise by said daily report of sales, duplicate deposit slip(s) from the bank, and credit invoices, if any .... In case any deposits are made in a night depository or at other than banking hours, the [debtor] agrees that as soon as possible, but in no case later than twelve hours after the next opening of the bank, he will secure and deliver to [Volunteer] the bank's receipt or other evidence of the making of such deposits.

The debtor thereafter proceeded to sell gasoline and motor fuel products which Volunteer placed on his premises in accordance with the Contract. However, according to Volunteer, the debtor defaulted in performance of his obligations under the Contract by failing to deposit proceeds received by him from the sale of the gasoline and motor fuel products in Volunteer's bank account every twenty-four hours. Volunteer asserts that as of May 31, 1982, the amount which the debtor should have had in his possession and which he should have been "holding in trust" for it was $1,921.07. Volunteer says this sum has not been remitted to it by the debtor and now seeks a judgment of nondischargeability in this amount.

■ Although denying generally the allegations set forth by Volunteer, the debtor apparently does not dispute that a shortage occurred. The debtor asserts, but did not substantiate by credible proof, that a payment he made to Volunteer was diverted to rental payments. (The site for the debtor's convenience store and self-service gas operation was leased from Volunteer.) The court is satisfied from the proof that the debtor failed to deposit, in accordance with the terms of the Contract, $1,668.84 of the total amount received by him from the sale of products placed on the premises by Volunteer. The difference in this sum and the sum asserted by Volunteer is represented by credit card sales which were later dishonored. The debtor deposited the "things of value" that he had received in connection with the rejected credit card sales; he now cannot be charged with defalcation when those charges were later rejected.

■ Finding a defalcation in the amount of $1,668.84, this leaves for determination whether this indebtedness is rendered nondischargeable by § 523(a)(4), that is, whether the debtor was acting in a fiduciary capacity. The issue is a matter of federal law. *Matter of Angelle,* 610 F.2d 1335, 1341 (5th Cir.1980).

## II

Section 523(a) of the Bankruptcy Code enacts in part:

A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

.　　.　　.　　.　　.

(4) for fraud or defalcation while acting in a fiduciary capacity . . . .

Although the Bankruptcy Code does not include a definition for "fiduciary capacity," there are numerous decisions involving exceptions to dischargeability, based on Code § 523(a)(4) or its progenitors, wherein the meaning of the term has been thoroughly considered. 3 Collier on Bankruptcy ¶ 523.-14[c] (15th ed. 1982). The term originally appeared in the federal bankruptcy laws in the Bankruptcy Act of 1841; the phrase qualified those "defalcations" which would not be discharged. The United States Supreme Court had occasion to consider the meaning of fiduciary capacity very shortly after its appearance in the Bankruptcy Act of 1841. One of the issues before the Court in *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844), was whether a commission merchant and factor who retained the proceeds from the sale of his principal's goods was a fiduciary debtor of his principal, thereby excepting the debt to the principal from the factor's discharge in bankruptcy.

> If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act.

> The cases enumerated, "the defalcation of a public officer," "executor," "administrator," "guardian," or "trustee," are not cases of implied, but special trusts, and the "other fiduciary capacity" mentioned, must mean the same class of trusts. The

act speaks of technical trusts and not those which the law implies from the contract. A factor is not, therefore, within the act.

*Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 208, 11 L.Ed. 236 (1844).

Since the *Chapman* decision in 1844, courts have continued to find that the fiducial relationship necessary to except a debt from discharge exists only in cases involving express or technical trusts, as opposed to either a constructive or implied trust or a trust *ex maleficio. Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *In re Johnson,* 691 F.2d 249, 251 (6th Cir.1982). The legislative history of Code § 523(a)(4) does not indicate Congress intended to modify the long-standing meaning of the term "fiduciary capacity." Consequently, trust obligations may be excepted from a debtor's discharge under § 523(a)(4) only if the trust is an express or technical trust.

Plaintiff submits that the general characteristics of an express trust are: (1) sufficient words to create a trust; (2) a definite subject; and (3) a certain and ascertained object or res. 89 C.J.S. *Trusts* § 22 (1955); *In re Thornton,* 544 F.2d 1005, 1007 (9th Cir.1976). It is plaintiff's contention that an express trust is created by the express words of the grantor identifying the property, persons, and purposes of the trust. See *Kaphan v. Toney,* 58 S.W. 909, 912–13 (Tenn.Ch.App.1899). Plaintiff further contends that the Contract with the debtor satisfies the requirements of an express trust. Plaintiff asserts: (1) paragraph 9 of the Contract explicitly required the debtor to hold in trust all money and other things of value received from the sale of plaintiff's goods and to make daily deposits in a bank account owned by plaintiff; (2) the subject matter of the trust was the debtor's operation of a business in which debtor agreed to sell plaintiff's products; and (3) the gasoline and/or motor fuel products were the object of the trust.

The debtor, on the other hand, argues that the Contract did not create a true trust relationship because it is no more than a

simple commercial agreement between a creditor and his debtor. According to the debtor, the character of a debt relationship, as opposed to the form thereof, should determine whether a fiducial relationship exists.

■ The nondischargeability of the sum plaintiff seeks to except from the debtor's discharge is contingent upon the existence of an express or technical trust between the parties. *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844). The following definitions are of interest:

> Express trust—A trust created or declared in express terms, and usually in writing, as distinguished from one inferred by the law from the conduct or dealings of the parties.

> Constructive trust—A trust raised by construction of law, or arising by operation of law, as distinguished from an express trust.

> Implied trust—A trust raised or created by implication of law; a trust implied or presumed from circumstances.

> Trust *ex maleficio*—A species of constructive trust arising out of some fraud, misconduct, or breach of faith on the part of the person to be charged as trustee, which renders it an equitable necessity that a trust should be implied.

Black's Law Dictionary 1680–81, 1683 (4th ed. 1951).

■ As a general rule, a separation of legal title and equitable ownership of the trust property is necessary to the formation of an express trust. 76 Am.Jur.2d *Trusts* § 36 (1975). The Restatement definition of "trust" likewise appears to require division between legal and equitable interests in the res of the trust:

> A trust, as the term is used in the Restatement of this subject ... is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.

Restatement (Second) of Trusts § 2 (1959).

Bogert distinguishes a contract from a trust in unequivocal terms: "One of the major distinctions between trust and contract is that in the former there is always a divided ownership of property, the trustee having usually a legal title and the beneficiary an equitable one; whereas in contract this element of division of property interest is entirely lacking." 1 G. Bogert & G. Bogert, The Law Of Trusts And Trustees § 17 (2d ed. 1965).

Paragraph 2 of the Contract, quoted in part hereinabove, provides for reservation in plaintiff of title to the gasoline and/or motor fuel products until sold by the debtor to retail customers in the ordinary course of business. A classic trust relationship between the parties is clearly not created by the Contract.

However, considering the Contract as a whole, the independent contractor status of the debtor, the restriction on assignment, and particularly considering the obligations imposed upon the debtor in this business enterprise (retail sale of gasoline and fuel products), the court is very reluctant to conclude no trust relationship existed between the parties. Indeed, plaintiff entrusted its products to the debtor for retail sale by him; the entrustment was tantamount to a conveyance of legal title to a trustee. The entrustment of goods to the debtor clearly empowered him to sell the goods for the mutual benefit of the parties.

It was incumbent upon the debtor to—

(1) "hold in trust for the use and benefit of [Volunteer]" the proceeds from the sale of goods entrusted to him by the plaintiff;

(2) deposit, at least once every 24 hours, proceeds from sales of plaintiff's products to the account of plaintiff in a bank designated by plaintiff;

(3) deliver deposit slips to plaintiff to evidence each deposit; after-hours deposits were to be documented within 12 hours after the next opening of the bank; and

(4) deliver a report daily of all sales in the preceding 24 hours and account for all proceeds by said daily report.

Citing *Chicago Cutter-Karcher, Inc. v. Maley,* (*In re Lord's, Inc.*), 356 F.2d 456, 458 (7th Cir.1965), *cert. denied,* 385 U.S. 847, 87 S.Ct. 55, 17 L.Ed.2d 78 (1966), the debtor contends the inclusion of the words "in trust" in a commercial agreement does not necessarily create an express trust. The court in *Maley* determined the "trust" clause in the agreement between the parties was inserted to assure performance of an obligation, not to create a trust. Concluding the only relationship between the bankrupt and its creditor was that of debtor-creditor, the court refused to except the bankrupt's obligation from discharge.

This court agrees that an express trust is not created merely by the use of the words "in trust." However, there is much more in the Contract between the plaintiff and debtor than the obligation of the debtor to hold sale proceeds "in trust." The additional obligations of the debtor in this case readily distinguish it from the *Maley* case. The bankrupt in *Maley* was permitted to commingle proceeds from the sale of the creditor's shoes with proceeds from other sales in the bankrupt's department store. Also, the bankrupt had unrestricted use of the creditor's sale proceeds for at least fifteen days. In the case under consideration, the debtor was obliged to deposit proceeds in a *separate account* owned by plaintiff on a daily basis.

■ Considering the obligations of the debtor under the Contract with plaintiff, the court finds the parties intended to create an express trust when the Contract was executed. This finding is especially influenced by the fact the debtor was required to segregate proceeds from the sale of plaintiff's products from other proceeds in the debtor's business operation. Furthermore, the debtor was obligated to deposit proceeds belonging to plaintiff in an account of plaintiff, not in his own account, with a bank designated by plaintiff. The relationship between these parties clearly involved more than trust and confidence in

the popular sense of those terms. See *Upshur v. Briscoe,* 138 U.S. 365, 375, 11 S.Ct. 313, 316, 34 L.Ed. 931 (1891).

One court has observed that it is difficult and perhaps impossible to distinguish or reconcile cases decided under section 17a(4) of the Bankruptcy Act, the predecessor of Code § 523(a)(4). *Wayne Creamery v. Clements,* 14 Mich.App. 50, 165 N.W.2d 508 (1968). This court does believe, however, that its decision may be distinguished from other cases involving the sale of motor fuel products and the retail seller's obligation to the supplier of the products.

Lambert, the bankrupt, managed a gas station owned by an oil company in *A.T. Williams Oil Co. v. Lambert,* 5 Bankr.Ct. Dec. (CRR) 804 (W.D.Va.1979). Lambert was required to make daily deposits of cash in a company account. However, there was no evidence the parties had intended for Lambert to hold the sales proceeds as trustee for Williams Oil. *Id.* at 805. Therefore, Lambert was not acting in a fiduciary capacity, and his supplier could not rely upon section 17a(4) of the former Bankruptcy Act to except Lambert's obligation from his discharge.

*Quarles Oil Co., Inc. v. Williams,* 7 Bankr. Ct.Dec. (CRR) 45 (Bkrtcy.W.D.Va.1980), and the case before this court have several similarities. Williams owned and operated a convenience store on property which he leased. Swifty and Williams entered into a commission agreement wherein Williams agreed to make best efforts to sell gasoline. Williams would be entitled to a commission based upon metered sales. Title to the gasoline supplied was to remain in Swifty until sold by Williams, who was required to remit proceeds to Swifty by making daily deposits, less his commission, in a local bank. Swifty assigned its rights to Quarles Oil Co., Inc. A dispute arose between Quarles and Williams when proceeds were not promptly remitted. The pumps at Williams' store were padlocked on three separate occasions. The arrearage was paid by Williams and the padlocks were removed on the first two occasions. The shortage amounted to $2,192.42 when the pumps

were padlocked for the third time. Defiantly, Williams forcefully removed the padlocks and sold $3,049.78 worth of gasoline. The court concluded that Williams was merely a commission agent as opposed to a trustee with a fiduciary duty. Although the court declined to except the $2,192.42 shortage existing when the pumps were padlocked for the third time from Williams' discharge, the court did determine the sales following the forceful removal of the padlock were larcenous and thus nondischargeable under § 523(a)(4).

It is not apparent whether the daily deposits were made in an account of the debtor or the supplier. In any event, the court in *Williams* did not find an express trust existed under the commission agreement, whereas, in the instant case, the court has found the parties intended to create an express trust when the Contract was executed. Since only one paragraph of the commission agreement in the *Williams* case is recited in the opinion, this court is unable to distinguish the agreement in that case from the Contract in the case under consideration.

*Matter of Walker,* 7 B.R. 563 (Bkrtcy.M. D.Ga.1980), involved the employment of Walker as manager of a service station owned by Mullis. It was Walker's responsibility to manage the inventory of the station, account therefor, and collect and deposit funds received from the operation of the service station. A shortage exceeding $4,000.00 was discovered. Walker denied any knowledge of how the shortage could have occurred, with the exception of $100.00 used by one of his employees for a personal purchase. The court concluded Walker was not a fiduciary of the service station owner. Unlike the instant case, no agreement creating a trust was submitted into evidence.

Dawson, a "trusted agent," was the manager of a service station for DL & B Oil Co. when the books of the company indicated a $9,901.42 shortage. The station was closed upon discovery of the deficiency. It is assumed that a judgment was obtained since the reported opinion recites: "No part of the claim deficiency was ever recovered, except some $450 by wage garnishment." *DL & B Oil Co. v. Dawson,* 16 B.R. 343, 344 (Bkrtcy.N.D.Ill.1982). There were certain understandings between DL & B and Dawson, including his obligation to make daily deposits with the president of DL & B. However, just as in *Matter of Walker,* there was no proof of a technical trust between the parties.

The debtor in the instant case has also cited *In re Barker,* 14 B.R. 852 (Bkrtcy.E.D. Tenn.1981) and *In re Harrill,* 1 B.R. 76 (Bkrtcy.E.D.Tenn.1979), a previous decision of this court, in support of its contention that no fiducial duty existed between him and Volunteer. *Barker* and *Harrill* are distinguishable since there was no basis for an express trust in either case, unlike the case under consideration.

The court also wishes to distinguish the instant case from *In re Miles,* 5 B.R. 458 (Bkrtcy.E.D.Va.1980), wherein Judge Bonney held that two inventory financing agreements were not express trusts with correlative fiduciary duties. The debtors in *Miles* essentially agreed to hold proceeds from the sale of inventory in trust for the benefit of both secured creditors and separate and apart from their other funds in the case of one of the two secured creditors. Judge Bonney found the relationship between the parties was no more than that of debtor-creditor and that a financing transaction is not a trust merely because the words "in trust" are used. This court concurs in the decision in *Miles,* considering agreements to hold proceeds from the sale of inventory for the benefit of secured creditors are customarily ignored and the fact that inventory financing arrangements do not ordinarily involve a trust relationship.

Collier states: "[U]nless there be some additional fact, section 523(a)(4), insofar as it relates to a debtor acting in a fiduciary capacity, does not apply to frauds of agents, bailees, brokers, factors, partners, and other persons similarly situated." 3 Collier on Bankruptcy ¶ 523.14[c] (15th ed. 1982). The court believes the obligations assumed by the debtor, an independent contractor, un-

der the Contract constitute an "additional fact" requiring the court to conclude the debtor was acting in a fiduciary capacity toward plaintiff when the defalcation occurred.

The court does observe that any contract in a dischargeability action involving a question of fiducial capacity under § 523(a)(4) must be scrutinized to ascertain if a trust relationship was in fact intended and effected. The facts in each case require a strict examination.

The indebtedness of $1,668.84 owed to the plaintiff is a nondischargeable obligation of the debtor, excepted from discharge pursuant to 11 U.S.C.A. § 523(a)(4) (1979).

This memorandum constitutes findings of fact and conclusions of law required by Bankruptcy Rule 752.