**In re William H. SUTTON and Eliza Bell Sutton, Debtors.**

**ENERGY MARKETING CORPORATION, Plaintiff,**

**v.**

**William H. SUTTON, Defendant.**

**Bankruptcy No. 181–03715.**
**Adv. No. 182–0145.**

United States Bankruptcy Court, M.D. Tennessee.

April 13, 1984.

Thomas J. Stack, Pulaski, Tenn., for debtors.

Samuel L. Felker, Nashville, Tenn., for Energy Marketing Corp.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This adversary proceeding was initiated by the plaintiff, Energy Marketing Corporation (hereinafter referred to as EMC), seeking a judgment for $20,390.55 against the debtor, William H. Sutton, (hereinafter referred to as the debtor), and seeking to have that judgment declared nondischargeable or in the alternative to have the debtors' discharge denied. The plaintiff asserts three alternative theories. First, pursuant to 11 U.S.C. § 523(a)(4), EMC alleges that the debtor committed fraud or defalcation while acting in a fiduciary capacity and/or was guilty of embezzlement. Second, EMC asserts that its debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2). Finally, EMC asserts that the debtor should be denied a discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3) and 727(a)(5).

Upon consideration of the evidence presented, exhibits, briefs of the parties and the entire record, this court concludes that EMC has established that it is entitled to a judgment in the amount of $17,800.74;

however, EMC failed to establish either that its unsecured claim of $17,800.74 is nondischargeable or that the debtor has engaged in activities which would necessitate a denial of his discharge.

The following shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The debtor operated a gas and service station known as Bill's Shell Service in Pulaski, Tennessee, from December, 1980, until October 31, 1981. EMC is a Tennessee corporation primarily engaged in the business of distributing gasoline and petroleum products. On November 15, 1980, the debtor entered into both a dealership agreement and a consignment agreement with EMC. From December, 1980, until the closing of Bill's Shell Service in October of 1981, the debtor sold EMC gasoline from Bill's Shell Service, receiving a $.03 commission per gallon of gasoline sold.

The Consignment Agreement entered into between the debtor and EMC provided that the title to all gasoline furnished by EMC to the debtor would remain in EMC until sold. Under the terms of this Agreement, the debtor was required to make daily deposits of all receipts from sales of EMC gasoline in a checking account opened and maintained at a local bank. The Agreement allowed the debtor to maintain control over the funds deposited in said checking account until a weekly accounting occurred between EMC and the debtor.[1]

The debtor opened a checking account at the First National Bank of Pulaski and began operating the service station on December 15, 1980. During the months the debtor operated Bill's Shell Service, an EMC representative would call on the station each week to read the gasoline pumps. The representative would prepare a meter ticket showing the cost of all gasoline sold during the previous week less the debtor's commission. The debtor or his wife would then write a check on the business's sole bank account to EMC in payment for gasoline sold by the station during the previous week less commissions.

In January or February of 1981, the debtor began experiencing difficulties in the management of his company's finances.[2] He discovered that he did not have sufficient funds on hand in his bank account or the cash register to pay EMC for the gasoline sold the previous week. Therefore, the debtor would pay EMC with checks he intended to cover with receipts from the sales of gasoline during the next week of operation.[3]

On October 14, 1981, the debtor issued a check to EMC in the amount of $16,372.00 as payment for the previous week's gasoline sales less commissions. On October

---

1. The Consignment Agreement provides in relevant part:

 "4. EMC shall remit to Marketer (Mr. William Sutton) an amount per gallon calculated on all gasoline metered sales, sold by Marketer, whether regular, no lead, or premium, as shown below: REMITTANCE PER GALLON $.03.

 5. Marketer agrees that, in order to safeguard EMC's funds, a checking account shall be opened promptly and maintained at a local bank for the purpose of keeping gasoline sales separate from all other receipts. Marketer agrees that it will deposit daily in said account all receipts from all sales made at the station of gasoline and petroleum products supplied by EMC. Marketer acknowledges that it will be unconditionally liable for the loss of any funds from sales. EMC's standard operating procedure covering remittances and reporting of gasoline sales shall be followed, and there *shall be a weekly accounting be-* *tween the parties whereby Marketer shall receive the payments to which it is entitled."* (emphasis added).

2. The evidence showed that the debtor has a tenth grade education, but no formal education or training in financial management. He had little training or expertise in the management of the financial affairs of a small company. While the debtor had experience working in gasoline service stations, he had never been responsible for handling or supervising the bookkeeping or financial affairs of those stations.

3. EMC first received an insufficient funds check from the debtor in June, 1981. Upon inquiry, First National Bank informed EMC that a bank error had been made and issued a cashier's check to EMC. EMC did not review the debtor's bank statement to confirm this or audit the account.

21, 1981, the Union Bank of Pulaski, Tennessee, returned the October 14th check to EMC marked "insufficient funds." Between October 14, 1981, and October 21, 1981, the debtor received several deliveries of gasoline from EMC and sold gasoline worth $18,868.90. On October 21, 1981, Bill's Shell Service closed its business. After crediting all amounts collected from this station's cash register and from an auction of Bill's Shell Service's inventory and equipment, the debtor owed EMC $17,800.74.

On the date of the closure of its business, the debtor provided EMC access to all of his business receipts and records. The records were such that during the operation of his business, the debtor had retained business receipts in separate envelopes for each month of operation. The debtor testified at trial that these receipts were documentation of his business' past cash transactions.

## I.

 Two separate exceptions to discharge are established under 11 U.S.C. § 523(a)(4).[4] An individual debtor may not be discharged for a debt based on (i) fraud or defalcation while acting in a fiduciary capacity, or (ii) embezzlement or larceny, whether or not acting in a fiduciary capacity. *Gribble v. Carlton*, 26 B.R. 202, 205 (Bkrtcy.M.D.Tenn.1982); 3 COLLIER ON BANKRUPTCY ¶ 523.14, at 523–94 (15th ed. 1983).

While the terms fraud and defalcation normally denote moral dereliction, the courts have held that these terms when used in the context of § 523(a)(4) may include innocent defaults. Since in most instances the debtor is remiss in his payments to the creditor, courts have primarily focused on the issue of whether or not a fiduciary relationship existed. *Gonzales v.*

*Raiser Construction Co., Inc.*, 22 B.R. 58 (Bkrtcy. 9th Cir.1982); *Save-On Oil Co., Inc. v. Wise*, 6 B.R. 867, 870 (Bkrtcy.M.D. Fla.1980); *Volunteer State Oil Co. v. Adkisson*, 26 B.R. 879 (Bkrtcy.E.D.Tenn. 1983); *Aetna Insurance Co. v. Byrd*, 15 B.R. 154, 156 (Bkrtcy.E.D.Va.1981).

In the case at bar, the debtor has admitted that he did not pay EMC for gasoline sold by his station. Upon careful analysis of all pertinent facts, this court concludes that the debtor was not acting in a fiduciary capacity as defined under § 523(a)(4) of the Bankruptcy Code.

This court has defined the term fiduciary as "limited to express trusts and not to trusts imposed because of an act of wrongdoing out of which the debt arose or to a trust implied by law from contracts." *Everwed Co. v. Ayers*, 25 B.R. 762, 774 (Bkrtcy.M.D.Tenn.1982) (quoting *Borg-Warner Acceptance Corp. v. Miles*, 5 B.R. 458, 460 (Bkrtcy.E.D.Va.1980)); *Volunteer State Oil Co. v. Adkisson*, 26 B.R. 879, 881 (Bkrtcy.E.D.Tenn.1983); *Anderson v. Anderson*, 21 B.R. 335, 337 (Bkrtcy.S.D.Cal. 1982). In consignment cases, the courts have required a strict conformance with trust principles in order to find an express trust. *Save-On Oil Co., Inc. v. Wise*, 6 B.R. 867 (Bkrtcy.M.D.Fla.1980); *Hurlbert v. Drake*, 5 B.R. 149 (Bkrtcy.D.Idaho 1980); *Volunteer State Oil Co. v. Adkisson*, 26 B.R. 879 (Bkrtcy.E.D.Tenn.1983).

Courts have consistently required that in order for a fiduciary relationship to exist the consignment proceeds must be segregated and must not be available for the consignee's general use. See *Hurlbert v. Drake*, 5 B.R. 149 (Bkrtcy.D.Idaho 1980)[5]; *Quarles Oil Co., Inc. v. Williams*, 7 B.R. Ct.Dec. (CRR) 45 (Bankr.W.D.Va.1980); *DL & B Oil Company v. Dawson*, 16 B.R. 343 (Bkrtcy.N.D.Ill.1982). In *Save-On Oil*

---

**4.** 11 U.S.C. § 523(a)(4) (West 1979) provides:
"(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ...."

**5.** The court in *Applegate v. Shuler*, 20 B.R. 163 (Bkrtcy.D.Idaho 1982) overruled a portion of its *Drake* decision; however, *Shuler* does not affect the portion of *Drake* interpreting the meaning of fiduciary capacity under § 523(a)(4) of the Bankruptcy Code.

*Co., Inc. v. Wise*, 6 B.R. 867 (Bkrtcy.M.D. Fla.1980)[6], the court held that a fiduciary relationship did not exist since the debtor had sole access to the funds and could use said funds as long as he was able to make his weekly payments.[7]

█ A number of factors present in the business relationship between the debtor and EMC militate against the finding of an express trust. The debtor was the sole signatory of the bank account in which he placed the receipts from his sales of EMC's gasoline.[8] This account was the only bank account used in connection with Bill's Shell Service and at times the debtor used this account for purposes other than the remission of funds to EMC.[9] The debtor was not required to remit its receipts to EMC until a weekly accounting. Furthermore, EMC did not require the debtor to pay all the proceeds received from his sales of gasoline but allowed him to retain an amount of those proceeds equal to his commissioned payments. While EMC may have intended to create an express trust arrangement with the debtor, it failed to properly structure and maintain such a relationship. Without an express trust relationship, a fiduciary relationship under § 523(a)(4) cannot be found.

█ EMC's second argument under § 523(a)(4) alleges that due to embezzlement by the debtor, his debt to EMC should not be discharged. It is well established that a debt may be nondischargeable under § 523(a)(4) due to a debtor's embezzlement

regardless of the existence of a fiduciary relationship between the debtor and creditor. *Gribble v. Carlton*, 26 B.R. 202 (Bkrtcy.M.D.Tenn.1982); *Snap-On Tools Corp. v. Rigsby*, 18 B.R. 518 (Bkrtcy.E.D. Va.1982).

█ Embezzlement is generally defined under federal law as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Gribble v. Carlton*, 26 B.R. 202 (Bkrtcy.M.D. Tenn.1982) (quoting *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895)).[10] To prove embezzlement, one must establish "fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud." *American Family Insurance Group v. Gumieny*, 8 B.R. 602, 605 (Bkrtcy.E.D.Wis.1981); *See e.g., United States Life Title Ins. Co. v. Dohm*, 19 B.R. 134, 138 (N.D.Ill.1982).

█ The party alleging an embezzlement under § 523(a)(4) must prove the elements of embezzlement by clear and convincing evidence. *Great American Insurance Co. v. Storms*, 28 B.R. 761, 765 (Bkrtcy.E.D.N.C.1983); *Snap-On Tools Corp. v. Rigsby*, 18 B.R. 518, 521 (Bkrtcy. E.D.Va.1982). While circumstantial evidence may be used to prove both fraudulent intent and the actual taking of the property, such evidence, in order to meet the clear and convincing standard, should

**6.** The facts in *Wise* are nearly identical with the facts in the case at bar. The debtor-consignee sold gasoline titled in the consignor and deposited the proceeds from this sale in a separate account. The debtor-consignee was the only signatory on the account and was obligated to make only weekly payments to the consignor.

**7.** An example of a consignment relationship which created a fiduciary relationship under § 523(a)(4) can be found in the case of *Volunteer State Oil Co. v. Adkisson*, 26 B.R. 879 (Bkrtcy.E.D.Tenn.1983). In *Adkisson*, the court found that a fiduciary relationship existed where the consignee pursuant to an express agreement was required to (i) make daily deposits of proceeds from the sales of consignor's petroleum products to the account of the consignors in a bank designated by consignor, (ii)

deliver deposit slips to the consignor to evidence each deposit and (iii) to make a daily report to the consignor accounting for all proceeds from petroleum sales during the preceding 24 hours.

**8.** Although, the evidence indicated the existence of a later account in which both the debtor and his wife were the signatories.

**9.** While the evidence showed that the debtor conducted most of his business transactions in cash, he testified that he paid his taxes as well as his remissions to EMC by checks drawn on Bill's Shell Service's sole bank account.

**10.** Tennessee law defines embezzlement in substantially the same terms. *See* TENN.CODE ANN. § 39–3–1121 (1982).

establish more than merely the unexplained absence of funds entrusted to a debtor. *See United States v. Powell*, 413 F.2d 1037, 1038 (4th Cir.1969); *Greyhound Lines, Inc. v. Thurston*, 18 B.R. 545, 550 (Bkrtcy.M.D. Ga.1982). A showing of sole access to the property plus an unexplained shortage has been the type of circumstantial evidence necessary to establish an embezzlement. *United States v. Walker*, 677 F.2d 1014 (4th Cir.1982).

■ EMC, in the present case, has failed to establish through circumstantial evidence or otherwise any intentional wrongdoing on the part of the debtor. EMC has not shown that the debtor intentionally used the portion of consignment proceeds to which he was not entitled or that he used them in any manner other than openly and on the reasonable belief he was so entitled. Furthermore, EMC has failed to establish that the debtor had sole access to these funds. The funds were commingled with the business's other funds and were accessible to the business's employees prior to deposit. Such evidence is insufficient to establish clearly and convincingly that the debtor engaged in actual fraud with the requisite moral turpitude.[11]

## II.

Pursuant to 11 U.S.C. § 523(a)(2)(A) (West 1979) and 11 U.S.C. § 523(a)(2)(B)

(West 1979), EMC challenges the dischargeability of its claim.[12] EMC asserts that the insufficient funds check the debtor tendered to EMC on October 14, 1981, constitutes both a false representation under § 523(a)(2)(A) and a false financial statement under § 523(a)(2)(B). As a result of this insufficient funds check, EMC argues it was fraudulently induced to make four additional deliveries of gasoline to the debtor.

■ A party objecting to dischargeability under § 523(a)(2)(A) must prove the following five elements: (1) that the debtor made materially false representations; (2) that the debtor knew the representations were false at the time he made them; (3) that the debtor made the false representations with the intention and purpose of deceiving the creditor; (4) that the creditor reasonably relied upon the debtor's materially false representations; and, (5) that the creditor sustained loss and damage as a proximate result of the materially false representations by the debtor. *Heinold Commodities & Securities, Inc. v. Hunt*, 30 B.R. 425, 435 (M.D.Tenn.1983); *Everwed Co. v. Ayers*, 25 B.R. 762, 772 (Bkrtcy.M.D. Tenn.1982). To establish a nondischargeability claim under § 523(a)(2)(B), a party must additionally prove that the false representations were contained in a written statement concerning the debtor's financial

**11.** In arguing that the facts presented established a case of embezzlement under § 523(a)(4), EMC relied on the case of *Applegate v. Shuler*, 20 B.R. 163 (Bkrtcy.D.Idaho 1982), *affirmed on rehearing*, 21 B.R. 643 (Bkrtcy.D. Idaho 1982). *Shuler* dealt with the situation in which a debtor agreed to sell a trailer on consignment for the plaintiff. Upon the sale of the trailer, the debtor-consignee, instead of remitting the proceeds directly to the plaintiff-consignor, deposited the proceeds in its general business account for use in his business. In the court's findings of fact, it noted that the debtor-consignee deposited the funds in his general business account "because of their precarious financial situation." *Shuler* at 164. In the present case, EMC has failed to establish the requisite intent established by the consignor in *Shuler*.

**12.** Section 523(a)(2)(B) provides in relevant part:

"(a) A discharge under §§ 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—
(2) for obtaining money, property, services, or an extension, renewal, or refinance (sic) of credit, by—
(A) false pretenses, a false representation, or actual fraud, other than, a statement respecting the debtors or an insider's financial condition; or
(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive."

condition. The above-stated standards are to be strictly construed in favor of the debtor with the party objecting to dischargeability carrying the burden of proof on each element. *Hunt* at 436.

In order to bring a claim under either § 523(a)(2)(A) or § 523(a)(2)(B), a creditor must first establish the existence of a misrepresentation. The mere fact that a debtor knowingly writes and utters an insufficient funds check does not establish a misrepresentation. *Heinold Commodities & Securities, Inc. v. Hunt,* 30 B.R. 425, 437–439 (M.D.Tenn.1983); *Jack Master, Inc. v. Collins,* 28 B.R. 244, 247 (Bkrtcy.W.D.Okla.1983); *Kwinter Realty v. Lo Bosco,* 14 B.R. 739, 742 (Bkrtcy.E.D. N.Y.1981); *Anson v. Hopkins,* 9 B.R. 741 (Bkrtcy.W.D.Mo.1981); *Save-On Oil Co., Inc. v. Wise,* 6 B.R. 867, 870 (Bkrtcy.M.D. Fla.1980). A creditor must establish some additional actions by the debtor in connection with the insufficient funds check. The action must be intentional and merely reckless representations are insufficient. *C.O. T.C.O. Gasoline, Inc. v. Jenes,* 18 B.R. 405, 407 (Bkrtcy.S.D.Fla.1981).

EMC has failed to proffer any evidence establishing that the debtor made any misrepresentations. At the time the debtor wrote and uttered the insufficient funds check to EMC, no statements were made concerning the financial stability of Bill's Shell Service or concerning whether the debtor had sufficient funds to cover the check. Thus, EMC's debt cannot be found nondischargeable pursuant to either § 523(a)(2)(A) or § 523(a)(2)(B).

### III.

Finally, EMC argues that the debtor's entire discharge should be denied. EMC asserts that the debtor failed to explain the loss of assets from his sale of EMC gasoline pursuant to 11 U.S.C. § 727(a)(5) (West 1979), failed to keep or preserve recorded

information concerning his financial condition or business transactions pursuant to 11 U.S.C. § 727(a)(3) (West 1979) and transferred, removed or destroyed receipts from the sale of EMC gasoline in one year before the filing of the debtor's bankruptcy petition pursuant to 11 U.S.C. § 727(a)(2)(A) (West 1979). Based on the evidence presented, each of these arguments are found to be without substance.

Section 727(a)(5) states that a debtor who fails to satisfactorily explain any loss or deficiency of assets may not receive a discharge in bankruptcy.[13] Once the plaintiff proves that some of the debtor's assets are missing and that the debtor has failed upon request of the plaintiff to give a satisfactory explanation, the debtor has the burden of going forward with evidence that will explain satisfactorily the losses. *Gorsky v. D'Avignon,* 25 B.R. 838, 841 (Bkrtcy.D.Vt.1982); 4 COLLIER ON BANKRUPTCY § 727.08, at 727–64 (15th ed. 1983). As a general rule, the courts have interpreted a satisfactory explanation as requiring the debtor to "explain his losses or deficiencies in such a manner as to convince the court of good faith and businesslike conduct." *Third National Bank v. Trew,* No. 79–30450, slip op. at 12 (Bankr.M.D.Tenn. June 27, 1980); 4 COLLIER ON BANKRUPTCY § 727.08, at 727–64 (15th ed. 1983).

The debtor has explained to the satisfaction of this court the reason for the disappearance of the proceeds in question. The funds in question, along with all other funds of the debtor, were expended by him to cover the operating expenses of Bill's Shell Service and create additional funds to pay his creditors. Although the debtor poorly managed and operated his business, under the circumstances, his shortcomings do not reach a level of activity this court would deem as being in bad faith.

**13.** 11 U.S.C. § 727(a)(5) (West 1979) provides in relevant part:

"(a) The court shall grant the debtor a discharge, unless—

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;...."

Section 727(a)(3) states that a debtor who has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information from which his financial condition or business transactions could be determined shall be denied discharge.[14] In a complaint objecting to a debtor's discharge, the plaintiff has the burden of proving his objection. *Everwed Co. v. Ayers*, 25 B.R. 762, 770 (Bkrtcy.M.D. Tenn.1982); *Kosik v. Hays*, 31 B.R. 285, 288 (Bkrtcy.E.D.Tenn.1983); FED.R. BANKR.P. 4005. A creditor must show more than a bare assertion that the books at hand are inadequate. *Everwed v. Ayers*, 25 B.R. 762, 770 (Bkrtcy.M.D.Tenn.1982) (quoting *Uniroyal v. Grimes*, No. 75–1437 (Bankr.M.D.Tenn.1976)).

In determining whether a plaintiff has met his burden under § 727(a)(3), the courts have looked to the specific case. *Kosik v. Hays*, 31 B.R. 285, 288 (Bkrtcy.E. D.Tenn.1983). Several courts have, due to particular circumstances, refused to deny a discharge under § 727(a)(3) even when there has been a showing that the debtor kept no financial records. *Pilot Point National Bank v. Redfearn*, 29 B.R. 739, 740 (E.D.Tex.1983); *Spunt v. Wells*, 11 B.R. 438, 440 (Bkrtcy.D.R.I.1981); *Home Idemnity Co. v. Oesterle*, 651 F.2d 401, 404 (5th Cir.1981).

The evidence presented in the present case establishes that the debtor had kept records of his business transactions and that those records were made available to EMC. EMC failed to prove that the debtor withheld or destroyed any of its business records. While the records maintained by the debtor may not have been a paragon of clarity, this court notes that the debtor was self-employed and had very little formal education, facts known to the creditor from the beginning of its relationship with the debtor. Accordingly, the debtor's discharge will not be denied under § 727(a)(3).

Section 727(a)(2)(A) states that a debtor who has destroyed property with an intent to defraud creditors shall be denied a discharge.[15] In order to establish a 727(a)(2)(A) claim, a plaintiff must show both a concealment, removal or destruction of the debtor's property and an actual intent to hinder or defraud a creditor. *Murfreesboro Production Credit Association v. Harris*, 8 B.R. 88, 90–92 (Bkrtcy.M.D. Tenn.1980); *Future Time, Inc. v. Yates*, 26 B.R. 1006, 1007 (M.D.Ga.1983); *Pohl Construction Co. v. Waddle*, 29 B.R. 100, 102–103 (Bkrtcy.W.D.Ky.1983).

EMC in the present case has failed to establish any of the elements necessary to sustain a § 727(a)(2)(A) objection. EMC has failed to show that the debtor transferred, removed, or destroyed any of his property or the actual intent to hinder or delay EMC. Without more than a bare assertion that the debtor has engaged in such activities, this court is compelled to deny EMC's § 727(a)(2)(A) claim outright.

Accordingly, the court will enter an order awarding a judgment to EMC in the amount of $17,800.74. The court will further order that EMC's allegation that this judgment be declared nondischargeable be denied and that EMC's objection to the debtors' discharge be dismissed.

IT IS, THEREFORE, SO ORDERED.

---

**14.** 11 U.S.C. § 727(a)(3) (West 1979) provides in relevant part:

"(a) The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, multilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; ...."

**15.** 11 U.S.C. § 727(a)(2)(A) (West 1979) provides in relevant part:

"(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; ..."