**In re Steven P. RIGSBY, Debtor.**

**SNAP–ON TOOLS CORPORATION, Plaintiff,**

**v.**

**Steven P. RIGSBY, Defendant.**

**Bankruptcy No. 80–00343.**
**Adv. No. 80–0052.**

United States Bankruptcy Court,
E. D. Virginia,
Richmond Division.

March 10, 1982.

Joseph B. Benedetti, Christian, House, Benedetti & Lubman, Richmond, Va., for plaintiff.

Stephen C. Hall, Edward E. Willey, Jr., P.C., Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing by Snap-On Tools Corporation (Snap-On), Plaintiff herein, of a Complaint for the determination of the dischargeability of a debt owed by Steven P. Rigsby (Rigsby), the Defendant herein. A trial was held and evidence was submitted to the Court on February 27, 1981. Subsequent to the trial briefs were submitted and the Court heard oral argument on those briefs. Upon the foregoing the Court makes the following determination.

### STATEMENT OF THE CASE

Snap-On entered into an agreement with Rigsby on September 9, 1977 by which Rigsby sold tools as a consignment dealer for Snap-On. The agreement provided that Rigsby was neither an agent nor an employee of Snap-On. Rigsby sold the consigned goods directly to garage and service station operators and mechanics. Under the agreement between Rigsby and Snap-On the tools remained the property of Snap-On and the funds obtained through the sale of the tools less the dealer's commission were the property of Snap-On.

Some tools were sold through the use of purchase money security agreements. The purchase money security agreements were routinely assigned to Snap-On, however, the dealer collected the installment payments due from the purchasers in order to facilitate future sales. Snap-On terminated its dealer agreement in October, 1978 and inventoried the tools which had been delivered to Rigsby on consignment.

Snap-On argues that Rigsby collected moneys from cash and installment sales belonging to Snap-On and that Rigsby failed to turn over to Snap-On some of the money he collected from six separate purchasers. Richard Bradley testified that in June, 1978 he entered into an agreement with Rigsby by which he purchased equipment for his shop. He gave Rigsby $2,397.52 to pay for the items. John Conron, a branch manager of Snap-On, stated that Snap-On received only part of that amount and was told by Rigsby payments would be made by Bradley in installments. Rigsby argues he paid Snap-On $2,200.00 which he owed Snap-On for the Bradley account. Donald VanLandingham, Snap-On's Office Manager, stated that Rigsby's $2,200.00 was a payment for his general indebtedness to Snap-On. VanLandingham also noted that payments of $220.00 per month were paid on this general indebtedness account in October, November and December of 1978, after Rigsby's payment of $2,200.00.

Snap-On also alleges Rigsby falsely represented that he entered into an agreement to sell tool boxes to Raymond Taylor, Jr. in June, 1978, and that Rigsby misappropriated merchandise selling for $538.40. Taylor testified he never bought the tool boxes from Rigsby. Rigsby testified Taylor did buy the merchandise.

Snap-On alleged Rigsby defrauded Snap-On in four other accounts; however, Snap-On failed to profer witnesses who could testify as to the fraud. This Court need only consider Snap-On's allegations in the Bradley and Taylor accounts.

## CONCLUSIONS OF LAW

Were Taylor an unbiased witness, greater credibility could be given to his testimony than that of Rigsby; however, he had an interest in convincing Snap-On that he had no account with it. Both the statement of Rigsby and Taylor having the appearance of being equally self-serving, this Court finds a lack of clear and convincing evidence required of Snap-On to show that Rigsby misappropriated merchandise arising from the Taylor sale.

Snap-On argues that the debts due from Rigsby on the Bradley and Taylor accounts are nondischargeable in bankruptcy because those debts were created by "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny" as provided in 11 U.S.C. § 523(a)(4) of the Bankruptcy Code. Under this section only agreements which create a technical or express trust create a fiduciary relationship. In re Miles, 5 B.R. 458, 459 (Bkrtcy.E.D.Va. 1980); In re Wise, 6 B.R. 867, 871 (Bkrtcy. M.D.Fla.1980); In re Drake, 5 B.R. 149, 151 (Bkrtcy.Idaho 1980). The agreement Rigsby and Snap-On entered into did not create an express technical trust. Even the dealer agreement provided that Rigsby was neither an employee nor an agent of Snap-On. The agreement merely created a debtor-creditor relationship between the parties. The relationship does not fall within the definition of fiduciary as used in 11 U.S.C. § 523(a)(4). The debts are dischargeable in the absence of embezzlement or larceny.

11 U.S.C. § 523(a)(4) does not require the existence of a fiduciary relationship in order to establish that a debt created by acts of embezzlement or larceny is nondischargeable in bankruptcy. Both In re Gottheiner, 3 B.R. 404 (Bkrtcy.N.D.Ca. 1980) and In re Brown, 4 B.R. 539 (N.D.Ill. E.D.1980), cases cited by Rigsby, were decided pursuant to prior bankruptcy law which provided that a debt was nondischargeable if it was created by the bankrupt's "fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity". 11 U.S.C. § 17(a) (Repealed 1979).

Black's Law Dictionary defines "embezzle" as "willfully to take, or convert to one's own use, another's money or property, of which the wrongdoer acquired possession lawfully, by reason of some office or employment or position of trust." Black's Law Dictionary 468 (5th ed. 1979). The elements of an embezzlement are ". . . (1) a trust or fiduciary relationship, (2) that the property claimed embezzled is embraced within the meaning of the statute, (3) that

it came into the possession and care of accused by virtue of his employment, (4) it is property of another, (5) that his dealing therewith constituted a fraudulent conversion or appropriation of same to his own use, and (6) such was with the intent to deprive the owner thereof." *United States v. Powell*, 294 F.Supp. 1353, 1355 (E.D.Va. 1968), *affirmed*, 413 F.2d 1037 (4th Cir. 1969).

The elements of embezzlement must be proved by clear and convincing evidence to establish that a debt is nondischargeable in bankruptcy. Although the written agreement between Snap-On and Rigsby provided that the property and the sale proceeds remain the property of Snap-On, the actions of the parties refute such a provision. Snap-On allowed Rigsby to create the accounts receivable from his customers. He was not required to isolate these funds in a trust account. He had unrestricted use of these funds in his possession. *In re Williams*, 7 B.C.D. 45 (W.D. Va.1980) is a case in point. The plaintiff's assignor entered into a commission agreement with the defendant for the defendant to sell gasoline from the plaintiff's pumps on the defendant's property. Plaintiff retained title in the gasoline until it was sold by the defendant who was to remit the total gasoline sales proceeds, less commission, by making daily deposits in a local bank and weekly reports by mail. The defendant defaulted. The default was made good by agreement. The defendant again defaulted in remitting the net gasoline sales receipts in the amount of $2,192.42. The plaintiff padlocked the pumps. The court found that only the money collected from the gas sold after the defendant broke the padlocks was a debt nondischargeable in bankruptcy, stating that no fiduciary relationship existed between the parties and that "[t]he default by failure of Defendant to remit sales proceeds ... is an open account in debt and not an obligation for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny within the meaning of ... 11 U.S.C. § 523(a)(4)." *Williams* at 47. *See also, In re Wise*, 6 B.R. 867 (Bkrtcy.M.D.Fla.1980);

*In re Wooldridge*, No. BK–75–1213–R (Bkrtcy.E.D.Va., filed Aug. 11, 1976), *rev'd.* No. 760429–A–R (E.D.Va., filed Nov. 5, 1976). In *Wooldridge*, the District Court in reversing a decision of this Court held that the defendant's unfettered use of funds abrogated the parties' trust agreement.

This Court does not believe the Plaintiff has proferred clear and convincing evidence to establish that Rigsby embezzled the funds obtained in the Bradley transaction. Snap-On is simply an unpaid creditor of Rigsby.

An appropriate order will issue.