In re Leo Anthony
GOSELAND, Debtor.

James A. HARDESTY, Plaintiff,

v.

Leo Anthony GOSELAND, Defendant.

Civ. A. No. 89–1438–K.
Bankruptcy No. 88–12036.
Adv. No. 89–0280.

United States District Court,
D. Kansas.

April 11, 1990.

Don W. Riley, James R. Gilhousen, Crockett, Keeley & Gilhousen, Wichita, Kan., for plaintiff.

Keith D. Richey, Rumsey, Richey & Plummer, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This matter is before the court on appeal by the plaintiff, James H. Hardesty, from a ruling of the bankruptcy court, the Honorable Judge Pearson presiding. The plaintiff asserts that a certain debt owed to the plaintiff from the defendant, Leo Anthony Goseland ("Goseland" or "debtor"), should not be dischargeable in bankruptcy.

The plaintiff's complaint in this case alleged that the debt in question was nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6). However, at the time the pretrial order was filed on May 22, 1989, the plaintiff voluntarily withdrew his claim under § 523(a)(6). On July 6, 1989, six days before trial, the plaintiff filed a motion to amend the pretrial order to reinstate his § 523(a)(6) claim.

The plaintiff, in sum, claims that Goseland prepared an affidavit of equitable interest which was intended to grant the plaintiff an interest in Goseland's house to secure the debt between the parties. In addition, the plaintiff asserts that Goseland represented that he would file the affidavit with the Register of Deeds. However, plaintiff asserts that Goseland knowingly, intentionally, and maliciously failed to file the affidavit, resulting in the plaintiff losing his priority in the collateral.

On the day of trial, the bankruptcy court overruled the plaintiff's motion to amend the pretrial order and refused to consider the § 523(a)(6) claim. After the plaintiff had presented his evidence to the bankruptcy court and rested, the defendant moved for dismissal of the plaintiff's claim for failure to state a *prima facie* case in its case-in-chief. The bankruptcy court granted Goseland's motion for judgment at the end of the plaintiff's case.

As is more specifically set forth hereafter, the court finds that the bankruptcy court's granting of judgment for the defendant on the plaintiff's §§ 523(a)(2) and 523(a)(4) claims must be affirmed. However, the bankruptcy court's failure to allow the plaintiff to amend the pretrial order to include the § 523(a)(6) claim is a clear abuse of discretion by the bankruptcy court. As a result, this case must be remanded so that the bankruptcy court can hear the § 523(a)(6) claim.

### Findings of Fact

The facts in this case are not disputed. Both parties' exhibits were admitted without objection at the commencement of the trial proceedings. The plaintiff presented his case and rested. The bankruptcy court then granted Goseland's motion for directed verdict at the close of the plaintiff's case.

The evidence before the bankruptcy court below shows that Goseland had been a licensed real estate agent in Kansas since 1975 and a licensed real estate broker since 1978 or 1979. He became self-employed in the real estate business in 1980, working for others before that time. His real estate office is located at 1005 North Market, Wichita, Kansas. Mr. Goseland is the step son-in-law of Mr. Hardesty.

Mr. Hardesty, age 70, is a retired auto and aircraft mechanic. He did not complete the first year of high school. His only source of income is his monthly social security payments. Other than the purchase of the real estate commonly known as 6900 West 48th Street North in Wichita ("48th Street property"), Mr. Hardesty had not had any other experience in the purchase or sale of real estate. Mr. Goseland knew that the 48th Street property constituted Mr. Hardesty's life savings and that in September, 1985 there were no mortgages, liens, or other unpaid encumbrances against such property.

A short time prior to September of 1985, Mr. Goseland gave Mr. Hardesty a handwritten proposal that provided, among other things, that Mr. Goseland would purchase Mr. Hardesty's 48th Street property for $27,500.00, with $2,500.00 as a cash down payment and the balance of $25,000.00 to be paid over time. Specifically, Mr. Goseland proposed to give Mr. Hardesty a promissory note secured by the equity in his home commonly known as 426 St. James in Wichita.

Mr. Goseland represented to Mr. Hardesty that his home at 426 St. James had an approximate fair market value of $115,000.00 just prior to September of 1985. In addition, he represented that his equity in the house, which could be used to secure the indebtedness of $25,000.00 that would be owed to Mr. Hardesty, was approximately $53,500.00.

The evidence in this case shows that Mr. Goseland was purchasing the 426 St. James property under the terms of a real estate escrow contract dated April 14, 1977. The evidence also shows that Mr. and Mrs. Cazel, sellers of such property, had a primary obligation to Mid Kansas Federal Savings and Loan, which had a first mortgage on the property in the amount of $56,000.00 at the time Mr. Goseland purchased the property. In addition, under the terms of the real estate escrow contract, the Cazels carried back $11,241.34 of the total purchase price of $67,241.34.

Mr. Goseland told Mr. Hardesty that their transaction would be handled strictly on a business basis and not as a family matter. However, despite Mr. Goseland's assurances to Mr. Hardesty that this would be handled strictly as a business matter, he never told Mr. Hardesty that a bank would want a mortgage instead of an affidavit of equitable interest, which was prepared and used in this case as hereafter described.

On September 13, 1985, Mr. Hardesty and his wife, as sellers, signed a real estate purchase contract with Mr. Goseland, as buyer, relating to the 48th Street property, for the total purchase price of $27,500.00. This real estate purchase contract implemented the handwritten proposal of Mr. Goseland ($2,500.00 down at closing; balance of $25,000.00 carried by Mr. Hardesty). Mr. Goseland prepared the real estate purchase contract.

On September 26, 1985, Mr. Goseland handled and conducted the closing for the sale of Mr. Hardesty's 48th Street property to himself. That is to say, Mr. Goseland handled all of the paperwork involving the sale of the 48th Street property, and the closing took place at his real estate office. It was at the real estate closing that Mr. Hardesty saw for the first time the secured note and the affidavit of equitable interest. Mr. Goseland also prepared the seller's closing statement as well as the statutory warranty deed which transferred ownership of the 48th Street property from Mr. and Mrs. Hardesty to Mr. Goseland and his wife.

Also on September 26, 1985, Mr. Goseland borrowed $25,000.00 from the Boulevard State Bank. This indebtedness was secured by a mortgage against the 48th Street property which he had just purchased from Mr. Hardesty. From the $25,000.00 loan proceeds, Mr. Goseland used $2,500.00 to make the down payment to Mr. Hardesty as required by the real estate purchase contract.

Mr. Goseland kept the affidavit of equitable interest after the closing on September 26, 1985. He specifically told Mr. Hardesty that he would file it with the Sedgwick County Register of Deeds. Mr. Goseland testified that he would not expect Mr. Hardesty to turn over his life savings if it was not going to be secured by the $53,500.00 equity in his home. Mr. Goseland also testified that Mr. Hardesty was relying upon him to file the affidavit of equitable interest to properly protect him, and that there wasn't any reason he should not have relied upon him to file the affidavit.

As a real estate agent and broker, Mr. Goseland has known for many years that a mortgage secures money owed, and that foreclosure can result if the mortgage is not satisfied. In the transaction with Mr. Hardesty, Mr. Goseland prepared the affidavit of equitable interest which was to serve as the equivalent of a third mortgage on his equity in 426 St. James (Mid Kansas had the first mortgage and the Cazels had seller carryback). According to Mr. Goseland, the affidavit of equitable interest in this case was to give the same protection and have the same effect as a mortgage—if he didn't pay Mr. Hardesty, then Mr. Hardesty could foreclose on 426 St. James. Mr. Goseland also admitted that he knew at the time this transaction took place that it was important to file a mortgage or affidavit of equitable interest to protect and secure the position of such an interest.

According to Mr. Goseland, the affidavit of equitable interest was mailed to the courthouse for filing with a $5.00 check dated October 23, 1985. However, the affidavit of equitable interest was not filed, but rather, it was returned to Mr. Goseland shortly thereafter.

Pat Kettler, from the Office of Register of Deeds for Sedgwick County, Kansas, testified that the affidavit of equitable interest could not be filed if it were presented by itself, since the amount of indebtedness, upon which the mortgage registration fee is computed, is not reflected on the face of the affidavit. However, she also testified that if a copy of the security note was presented with the affidavit of equitable interest, it could be accepted for filing, since the mortgage registration fee of $62.50 could be computed from the security note which contains the unpaid balance of $25,000.00 stated thereon. Furthermore, if Mr. Goseland had signed the affidavit of equitable interest, instead of Mr. Hardesty, there would have been only a $5.00 recording fee to file the affidavit. In short, Mr. Goseland only needed to send $62.50 as a mortgage registration fee with the security note and affidavit; or, if he had signed the affidavit of equitable interest, a $5.00 recording fee.

Mr. Goseland knew that the affidavit of equitable interest had not been filed when the original affidavit was returned to him. At that point, however, Mr. Goseland did not make any further effort to get it on file even though he specifically told Mr. Hardesty, after it was returned, that he would "take care of it" and that it would be filed. Mr. Goseland admitted that there was nothing that prohibited him from filing the affidavit; that he never told Mr. Hardesty that he did not get it filed after telling him he would take care of it; and that he never gave Mr. Hardesty the affidavit of equitable interest so that he could file it at the courthouse.

On October 20, 1986, Mr. Goseland borrowed $20,000.00 from the Boulevard State Bank and gave the bank a real estate mortgage against 426 St. James. With this money, Mr. Goseland paid $6,000.00 to Mr. and Mrs. Cazel (even though the unpaid balance owed was around $9,000.00) and thereby cancelled the real estate escrow contract with the Cazels. Mr. Goseland received a deed from the Cazels and assumed the remaining first mortgage indebtedness with Mid Kansas Federal Savings and Loan in the approximate amount of $51,000.00 to $52,000.00.

Mr. Goseland admitted that when he received the $20,000.00 from the Boulevard State Bank, he knew he had not yet filed Mr. Hardesty's affidavit of equitable interest for the property at 426 St. James. In addition, Mr. Goseland admitted that he did not tell Mr. Hardesty about or get his consent to put the Boulevard State Bank's interest ahead of the affidavit of equitable interest in the property at 426 St. James. Moreover, Mr. Goseland did not tell the Boulevard State Bank that he had prepared an affidavit of equitable interest for Mr. Hardesty's benefit over one year earlier.

Additionally, Mr. Goseland testified that he understood that after he received the general warranty deed from the Cazels for the 426 St. James property, he was the owner of the property and at that time could have given Mr. Hardesty a mortgage in such property. However, Mr. Goseland did not give Mr. Hardesty a mortgage in such property at that time.

A series of tax liens were filed and released against Mr. Goseland as follows:

| Date filed | Date Released | Amount |
|---|---|---|
| 09-02-86 | 05-17-88 | $10,570.79 |
| 11-10-86 | 11-03-88 | 9,538.97 |
| 03-17-87 | | 19,495.67 |
| 01-27-88 | | 4,602.81 |
| 07-12-88 | | 1,838.84 |

Mr. Goseland was aware the IRS was filing tax liens. However, he did not tell Mr. Hardesty that the tax liens were being filed or attempt to file the affidavit of equitable interest. In fact, when Mr. Goseland was asked if he had attempted to file the affidavit of equitable interest after the tax lien in the amount of $4,602.81 was filed on January 27, 1988, Mr. Goseland responded that "it would have been fruitless to do that." Thus, Mr. Goseland merely acknowledged that there was no longer any equity in the property at 426 St. James to give Mr. Hardesty a secured status.

Six days before the hearing was to take place before the bankruptcy court, Mr. Hardesty filed a motion to amend the pretrial order. In such motion, Mr. Hardesty requested the court's permission to reassert his claim under 11 U.S.C. § 523(a)(6). The bankruptcy court considered Mr. Hardesty's motion at the commencement of the trial proceedings.

In requesting the bankruptcy court to grant the motion, counsel for the plaintiff made several arguments. For instance, counsel for the plaintiff argued that the defendant should not have been prejudiced by the plaintiff making its motion to amend just six days before trial because the plaintiff had asserted the § 523(a)(6) claim in its complaint and such claim would not rely on any facts except those which would be in evidence from the plaintiff's other claims. In addition, counsel for the plaintiff argued that his failure to raise the request to amend earlier was partially excusable because his request was based on the fact that a recent Tenth Circuit case had arguably broadened the definition of "malicious". *See In Re Posta*, 866 F.2d 364, 367 (10th Cir.1989).

In denying the motion to amend, the bankruptcy court said the following:

Rule 16 seems to permit an amendment only if manifest injustice would result. I am relying on the case of *In Re: Rio Rancho Estates v. Beyerlein*, 662 F.2d 700, under a Tenth Circuit case from 1981. I am going to deny the motion at this time. There was plenty of time to do the necessary discovery and to include the claim in the pretrial order. The motion, the instant motion was filed well after the case was set for trial. In fact, it was only filed July 6, and the orderly progress of the trial simply does not allow this type of amendment.

(Tr., p. 7.)

At the close of his case, the plaintiff renewed his motion to amend the pretrial order to include a claim under § 523(a)(6). The bankruptcy court again denied plaintiff's motion and did not allow him to make a proffer fully explaining his theory of why the motion should be granted on the facts presented. In addition, the bankruptcy court said the following:

The complaint originally stated the cause of action under 523(a)(6) and waived it, and it was waived in the pretrial order. The motion to amend the pretrial order was filed six days ago, a month-and-a-half after the pretrial order was filed, and sometime after the case was set for trial.

Notwithstanding the general principle that amendments to the pleadings should be freely granted, plaintiff's theory would let the Court, essentially, change the whole theory of the case at the conclusion of the evidence, and that simply isn't going to be done.

(Tr. of Decision by the Court, p. 4.) In addition, the bankruptcy court granted the defendant's motion for judgment after the plaintiff presented his case.

### Conclusions of Law

■ In reviewing the findings of the bankruptcy court, this court may set aside findings of fact only if they are clearly erroneous. Conclusions of law, however, are subject to *de novo* review. *In re*

*Blehm Land & Cattle Co.*, 859 F.2d 137 (10th Cir.1988); *In re Herd*, 840 F.2d 757, 759 (10th Cir.1988); and *In re Mullet*, 817 F.2d 677 (10th Cir.1987).

The primary issue this court must address is whether the bankruptcy court committed reversible error in not allowing plaintiff to amend the pretrial order to reassert his claim that the debt in question should not be discharged under 11 U.S.C. § 523(a)(6) because the defendant willfully and maliciously injured his property. The plaintiff also asserts, however, that the bankruptcy court committed reversible error in not finding that the debt in question was excepted from discharge under §§ 523(a)(2) and 523(a)(4). The court will first address these latter two issues.

■ The plaintiff claims that the bankruptcy court committed reversible error in finding that there was not a fiduciary relationship between the parties in this case and thus concluding that the plaintiff's § 523(a)(1) claim fails. The meaning of the term "fiduciary" is a matter of federal law. *In re Weiner*, 95 B.R. 204 (Bankr.D.Kan. 1989) (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934)). The general definition of fiduciary—a relationship involving confidence, trust and good faith—has been found to be too broad in the dischargeability context. *In re Angelle*, 610 F.2d 1335, 1338–39 (5th Cir.1980). As a result, the courts have limited the term "fiduciary capacity," as it is used in the statute, to include only those types of relationships arising out of a pre-existing express or technical trust and not those which the law implies from a contract. *In re Romero*, 535 F.2d 618, 621 (10th Cir.1976); and *In re Weiner*, 95 B.R. at 206.

■ Furthermore, a leading authority on bankruptcy says that "unless there be some additional fact, section 523(a)(4), insofar as it relates to a debtor acting in a fiduciary capacity, does not apply to frauds of *agents*, bailees, *brokers*, factors, partners, and other persons similarly situated." 3 COLLIER ON BANKRUPTCY ¶ 523.14[1][c] (15th ed. 1989) (footnotes omitted; emphasis added). In this case,

the bankruptcy court found that the facts indicate, in relevant part, as follows:

> The plaintiff did not retain the defendant in any manner as a real estate agent or broker. There was no contract for listing, there was no contract other than as buyer and seller between the two, and so, therefore, there was no relationship, no professional relationship between the two.

(Tr. of Decision by the Court, p. 4.) These findings can only be set aside if they are clearly erroneous. *In re Mullet*, 817 F.2d 677 (10th Cir.1987). However, there is clearly support in the record for such findings. For instance, the defendant received no commission on the transaction (Tr., pp. 104, 126), and he did not hold himself out to the plaintiff as a real estate broker in this transaction. (Tr., p. 130.) Thus, this court must affirm the finding by the bankruptcy court that the defendant was not acting in a fiduciary capacity in this transaction.

■ The plaintiff also claims that the bankruptcy court committed reversible error in finding that the plaintiff did not have a claim under § 523(a)(2). The plaintiff asserts in his brief that he has the burden to prove by clear and convincing evidence that "(1) the debtor made false representation; (2) the debtor knew it was false at the time he made the false representation; (3) the debtor made the false representation with the intention and purpose of deceiving the creditor; (4) the creditor reasonably relied on the false representation; and (5) the creditor sustained damage." (Pltf.'s Brief, p. 20); *see In re Mullet*, 817 F.2d 677 (10th Cir.1987). Accepting such as the necessary elements, the court must affirm the bankruptcy court because it found that the defendant did not "conceal the fact that he failed to file the affidavit as he represented. He made no misleading statements to conceal his failure and never represented that the document had, in fact, been recorded." (Tr. of Decision by the Court, p. 6.) Since this finding cannot be said to be clearly erroneous, the court must affirm the bankruptcy court on this issue because the plaintiff cannot prove the second element as set forth above.

■ The court now turns to the primary issue in this case. That is, whether the bankruptcy court committed reversible error in not allowing the plaintiff to amend the pretrial order to reassert his claim that the debt in question should not be discharged under 11 U.S.C. § 523(a)(6) because the defendant willfully and maliciously injured his property. Since this is a procedural question in federal court, the Federal Rules of Civil Procedure govern.

The pretrial order, when entered, "controls the subsequent course of the action, unless modified by a subsequent order," or, in the case of a final pretrial order, "to prevent manifest injustice." Fed.R.Civ.P. 16 (applicable to the bankruptcy court by 11 U.S.C.Bankr. Rule 7016). The Tenth Circuit has noted that Rule 16 was revised in 1983 to provide the court with increased judicial management authority to help control the increasingly crowded court dockets. *See R.L. Clark Drilling Contractors v. Schramm, Inc.*, 835 F.2d 1306, 1308 (10th Cir.1987). The court went on to note that, "Counsel bear a substantial responsibility for assisting the court in identifying the factual issues worthy of trial. If counsel fail to identify an issue for the court the right to have the issue tried is waived." *Id.* (quoting Fed.R.Civ.P. 16, advisory committee's notes to the 1983 amendment, subdivision (c)).[1] In addition, the burden of establishing manifest injustice falls on the moving party. *Smith v. Ford Motor Co.*, 626 F.2d 784, 795 (10th Cir.1980), *cert. denied*, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981).

It is a well settled rule that a grant or denial of a motion to amend the pretrial order is reviewed under an abuse of discretion standard.[2] *Schramm*, 835 F.2d at

---

**1.** That advisory committee comment note goes on to say the following:

> Although an order specifying the issues is intended to be binding, it may be amended at trial to avoid manifest injustice. See Rule

16(e). However, the rule's effectiveness depends on the court employing its discretion sparingly.

**2.** The Tenth Circuit has defined abuse of discretion as "an arbitrary, capricious, whimsical, or

1308; *Smith,* 626 F.2d at 795; *Seneca Nursing Home v. Secretary of Social & Rehabilitation Service,* 604 F.2d 1309, 1314 (10th Cir.1979); and *Monod v. Futura Inc.,* 415 F.2d 1170, 1173 (10th Cir.1969).

In fact, some courts and commentators have indicated that a high standard of abuse of discretion is required. For instance, in *Case v. Abrams,* 352 F.2d 193, 195 (10th Cir.1965), the court said the following:

> Unlike pleadings, usually based on information and belief, the pre-trial order defining the issues is the result to discovery in which, as this order recited, "* * * both parties hereto know the testimony of the other's witnesses." The pre-trial order supersedes the pleadings and becomes the governing pattern of the lawsuit. The issues having been thus defined, they ought to be adhered to in the absence of some good and sufficient reason which must rest largely within the discretion of the court.

Furthermore, MOORE'S FEDERAL PRACTICE concludes that the courts have adopted the following position:

> "Rule 16, of the Federal Rules of Civil Procedure, permitting pretrial procedures, can achieve its purpose of improving the quality of justice only if the pretrial requirements entered at the discretion of the trial court are applied with intelligent flexibility, taking into full consideration the exigencies of each situation. The trial judge must be permitted wide latitude in guiding a case through its preparatory stages. His decision as to the extent that pretrial activity should prevent the introduction of otherwise competent and relevant testimony at trial must not be disturbed unless it is demonstrated that he has clearly abused the broad discretion vested in him by Rule 16."

3 MOORE'S FEDERAL PRACTICE ¶ 16.19 (quoting *Davis v. Duplantis,* 448 F.2d 918, 921 (5th Cir.1971)). However, "total inflex-

ibility is undesirable." *Hull v. Chevron,* 812 F.2d 584, 588 (10th Cir.1987) (quoting Rule 16, advisory committee notes to the 1983 amendment, subsection (e)).

In determining whether or not to allow an amendment to an pretrial order, a trial judge must consider and balance several factors. For instance, as is succinctly stated by an often quoted commentary on pretrial orders:

> Treatment of the pre-trial order after entry requires an appropriate balance between firmness to preserve the essential integrity of the order, and adaptability to meet changed or newly discovered conditions or to respond to the special demands of justice. If a good order must "say something", what it says must have more than shifting or transitory meaning. A policy of too-easy modification not only encourages carelessness in the preparation and approval of the initial order, but unduly discounts it as the governing pattern of the trial. On the other hand, an unswerving insistence upon every provision, under all circumstances, may work grave injustice in individual cases, and by repeated instances could discourage the entire bar of the court from entering into pre-trial agreements in the spirit contemplated by the rules.

"The Pre–Trial Order," a presentation of Hon. A. Sherman Christenson, Seminar on Procedures for Effective Judicial Administration, Southern Methodist School of Law (July 1961), *reprinted in* 29 F.R.D. 362, 371 (1962).

The Tenth Circuit has said that the pretrial order "is a procedural tool to facilitate the trial of a lawsuit on its merits and not to defeat it on a technicality. We must not allow ourselves to construe the pre-trial order in the spirit of common law pleading." *Century Refining Co. v. Hall,* 316 F.2d 15, 20 (10th Cir.1963). In addition, the Supreme Court has said that "[t]he Federal Rules reject the approach that pleading is a

---

manifestly unreasonable judgment." *United States v. Cardenas,* 864 F.2d 1528, 1530 (10th Cir.1989). In addition, the court has said that an abuse of discretion "is not merely an error of law or judgment, but an overriding of the law

by the exercise of manifestly unreasonable judgment or the result of impartiality, prejudice, bias or ill-will as shown by evidence or the record of proceedings." *U.S. v. Wright,* 826 F.2d 938 (10th Cir.1987).

game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

In arguing that the bankruptcy court's decision must be affirmed, the defendant asserts that the rule of law controlling this appeal is set forth in *First City Bank v. Air Capitol Aircraft Sales*, 820 F.2d 1127 (10th Cir.1987). In that case, the trial court refused to allow the moving party to amend its answer, pursuant to Fed.R.Civ.P. 15(a), to add a counterclaim against the opposing party because such request was untimely. On appeal, the moving party contended that untimeliness alone is insufficient and that the opposing party must show prejudice. The Tenth Circuit rejected such argument and held that a "district court acts within the bounds of its discretion when it denies leave to amend for 'untimeliness' or 'undue delay'. Prejudice to the opposing party need not be shown also." *First City Bank*, 820 F.2d at 1133. However, such case does not state the controlling law to be applied on this appeal for several reasons.

For instance, the issue in *First City Bank* was whether the moving party could amend its answer, pursuant to Rule 15(a), to state a counterclaim that had never before been an issue in the case. In contrast, the issue in this case is whether the moving party (the plaintiff) can amend the pretrial order pursuant to Rule 16 to reassert a claim that had previously been stated as a claim in the complaint. In addition, the facts in *First City Bank* indicate that the moving party participated in a pattern of delay throughout the pretrial process. In contrast, there is no evidence of such delay tactics by the moving party in this case. Thus, *First City Bank* is clearly distinguishable from the case at bar.

It should also be noted that the bankruptcy court relied on *Rio Rancho Estates v. Beyerlein*, 662 F.2d 700 (10th Cir.1981), in finding that manifest injustice would not result from the denial of the plaintiff's request to amend the pretrial order under

Rule 16 because the "orderly progress of the trial simply doesn't allow this type of amendment." (Tr., p. 7.) However, that case only addresses whether the moving party should be allowed to amend the amount of a counterclaim pursuant to Rule 15(b). Thus, that case is not controlling for purposes of the case at bar since the court herein must determine whether the bankruptcy court abused its discretion in determining that the pretrial order did not need to be modified to prevent manifest injustice pursuant to Rule 16(e).

An instructive case for making such a determination is *Smith v. Ford Motor Co.*, 626 F.2d at 797. In finding that the trial court had abused its discretion in allowing one of the plaintiff's experts to testify contrary to the pretrial order, the court in *Smith* gave the following factors which are to be considered in determining whether the trial court abused its discretion in excluding or allowing testimony not specified in the pretrial order:

"(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or willfulness in failing to comply...."

626 F.2d at 797 (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir.1977)). Even though the *Smith* case sought to introduce witnesses at trial contrary to the pretrial order instead of another issue as in this case, the *Smith* factors are still instructive for making the determination of whether the bankruptcy court should have allowed the plaintiff to amend the pretrial order in this case.

For example, in applying the first *Smith* factor to the case at bar, it is not realistic for the defendant to claim to be unduly prejudiced or surprised by the plaintiff's request to reinstate his claim under § 523(a)(6) for willful and malicious injury by the defendant to the plaintiff's property.

The defendant should not have been unduly surprised because the plaintiff had stated a claim for such in his complaint and did notify the defendant six days before trial of his desire to reinstate such claim. In addition, the defendant should not have been unduly prejudiced because the plaintiff said he would not present any additional evidence to prove such claim.

In fact, the only prejudice the defendant should have faced was the "burden" of having to defend against another legal issue. However, in applying the second *Smith* factor, ability of the nonmoving party to cure the prejudice, it is clear that the defendant could have cured such prejudice by a minimum amount of extra preparation time.

Furthermore, the third *Smith* factor requires the court to consider the extent to which allowing the plaintiff to amend the pretrial order would have disrupted the orderly and efficient trial of the case or of other cases in court. Since the plaintiff was not going to present any extra evidence if it was allowed add the § 523(a)(6) claim, the disruption to the bankruptcy court should have been minimal. For instance, the issue sought to be added was not unduly complicated. As a result, it should not have "burdened" the court too much to address the additional issue. In addition, since the plaintiff had included such a claim in its complaint and made its request to amend before trial date, the amount of extra time needed by the defendant to prepare for trial should have been minimal. Furthermore, since the plaintiff gave the court and the defendant six days' notice before the trial date of his desire to reassert the § 523(a)(6) issue, it is possible that no delay in the trial date would have been necessary.

The final *Smith* factor that must be considered is whether the plaintiff acted in bad faith or willfully tried to act contrary to the pretrial order. The plaintiff claims that he agreed to the withdrawal of the § 523(a)(6) claim at the pretrial conference because he was concerned whether he could prove the "malicious" element. Under the requirements of Fed.R.Civ.P. 11 and 16(c)(1), the plaintiff was required to eliminate all frivolous claims or face the possibility of sanctions. Thus, since the plaintiff felt he lacked the evidence necessary to prove the "malicious" element, he felt he had to agree to the withdrawal of such claim in the pretrial order.

However, plaintiff claims that after the pretrial conference he learned of a recent decision by the Tenth Circuit which addressed the "malicious" element. *See In Re Posta,* 866 F.2d 364 (10th Cir.1989) (judgment entered just three and one-half months prior to the final pretrial conference). The *Posta* decision does address and define what element of malicious intent is necessary for an exception to discharge under § 523(a)(6) and does instruct how one can prove such element. Thus, the evidence indicates that the plaintiff acted in good faith in his request to reassert the § 523(a)(6) claim since *Posta* arguably did give the plaintiff authority and instruction on how to prove the malicious intent element.

Furthermore, there is not any evidence before the court which would indicate that the plaintiff willfully acted or intended to act contrary to the pretrial order. In addition, it does not appear that the plaintiff would benefit in any significant way from the initial withdrawal and then the subsequent reassertion of the § 523(a)(6) issue.

Thus, since this case satisfies all of the *Smith* factors, it appears to be the type of case that cries out for a determination that, in fact, the plaintiff would suffer "manifest injustice" by not allowing the pretrial order to be amended to include the issue under 11 U.S.C. § 523(a)(6). However, before this court can say that the bankruptcy court abused its discretion in not granting the amendment, it must be established that the plaintiff was prejudiced by the bankruptcy court ruling. *See Rock Island Imp. Co. v. Helmerich & Payne, Inc.,* 698 F.2d 1075, 1082 (10th Cir.1983); and *Keen v. Detroit,* 569 F.2d 547, 554 (10th Cir.1978).

The bankruptcy court did not consider plaintiff's § 523(a)(6) claim, and as a result the merits of such claim are not properly before this court. However, if, given the

facts in this case, the plaintiff does state a claim upon which relief could be granted under § 523(a)(6), then the bankruptcy court's refusal to give the plaintiff his day in court on such claim would prejudice the plaintiff.

In order to prevail on a § 523(a)(6) claim, the plaintiff must prove by clear and convincing evidence that the defendant's conduct was both "willful" and "malicious". *In re Posta*, 866 F.2d at 367. The *Posta* court said the "willful" element is satisfied if the "debtor intentionally performed the basic act complained of" and if such conduct is "volitional and deliberate and over which the debtor exercises meaningful control, as opposed to unintentional or accidental conduct." *Id.* In their current form, the facts show that the defendant promised the plaintiff on two occasions that he would take care of the plaintiff's interest in the property in question by filing the affidavit of equitable interest, but the defendant did not file the affidavit and in fact subsequently gave the Boulevard State Bank a $20,000.00 mortgage without the plaintiff's knowledge or consent. Without an explanation for such conduct, the court must conclude that the defendant intentionally did not file the affidavit, and as a result such conduct meets the "willful" requirement of § 523(a)(6).

The *Posta* court also is instructive on how the necessary malicious intent can be proven. For instance, that case states that the intent can be shown by either (1) direct evidence that the defendant acted with the specific intent to harm the plaintiff; or (2) evidence that in spite of knowledge of the plaintiff's rights the defendant took action in violation of such rights. *Posta*, 866 F.2d at 367. In addition, the court recognized that the required knowledge can be "inferred from [the defendant's] experience in the business, his concealment of the sale, or by his admission that he has read and understood the security agreement." *Id.*

While not the factfinder, it would appear that the defendant was an experienced real estate agent/broker; that he did not inform the plaintiff of the fact that he gave a mortgage to the Boulevard State Bank nor did he inform the Boulevard State Bank that he had agreed to give the plaintiff an interest in the property in question before the bank extended the mortgage (concealment could be found from these facts); and since he prepared the agreement in question, that he must have read and understood the security agreement he had with the plaintiff. Since *Posta* only requires that the plaintiff be able to prove one of the above for the court to infer the required knowledge, it seems clear from the evidence before this court that the plaintiff could establish that the defendant took action in violation of the plaintiff's rights in spite of knowledge of such rights.

Therefore, from the evidence before the court, the plaintiff could establish by clear and convincing evidence that the defendant's conduct was both "willful" and "malicious". Furthermore, since it appears that the plaintiff could prove the § 523(a)(6) claim, plaintiff was prejudiced by the bankruptcy court's refusal to amend the pretrial order and consider such claim at the trial.

As a result, since the court has already established that this case meets the four factors to establish an abuse of discretion announced in *Smith*, 626 F.2d 784, the court finds that the bankruptcy court did clearly abuse its discretion in not allowing the pretrial order to be amended so that the plaintiff could assert the § 523(a)(6) claim. *See also Matter of Delagrange*, 820 F.2d 229 (7th Cir.1987) (affirmed the bankruptcy court allowance of an amendment to the pretrial order to include a claim for avoiding the asserted fraudulent transfer under 11 U.S.C. § 544(b), even though the trustee had agreed prior to trial to proceed solely under § 544(a), because failure to amend would prejudice the moving party but not the opposing party, and the amendment of the pretrial order would have only a minimal impact on the administration of the case); *Joy Mfg. Co. v. Sola Basic Ind.*, 697 F.2d 104 (3d Cir.1982) (held it was an abuse of discretion for the trial judge not to allow an amendment to the pretrial statement during trial because the nonmoving party was not prejudiced; the moving party's willfulness in withholding the argu-

274

ment was not shown; and since the amendment went to the heart of the dispute, it would not have disrupted the trial); and *Sanders v. AFL–CIO*, 546 F.2d 879 (10th Cir.1976) (trial court abused its discretion in denying motion to reopen case to take evidence on an issue that had not been set forth in the pretrial order because the issue was a controlling one and it had only become an issue after the trial when the trial judge himself raised it).

In sum, if this court acquiesces in the bankruptcy court's reasoning for refusing an amendment to the pretrial order, given the circumstances in this case, this court can hardly contemplate *any* situation in which the bankruptcy court can or will be permitted *any* amendment at any future time. Surely, if the bankruptcy court's decision is affirmed in this case, such a decision can only serve as a precedent to hold fast, without exception. Such an event should not be the case at all. Indeed, there are, and will be, any number of situations to support the bankruptcy court's reasoning and discretion. This case, however, is not one of them.

Thus, this case must be remanded and the bankruptcy court instructed to address the § 523(a)(6) issue.

IT IS ACCORDINGLY ORDERED this 11th day of April, 1990, that the bankruptcy court's judgment for the defendant on plaintiff's 11 U.S.C. §§ 523(a)(2) and 523(a)(4) claims is affirmed.

IT IS FURTHER ORDERED that the bankruptcy court's refusal to grant the plaintiff's motion to amend the pretrial order to reassert a claim under 11 U.S.C. § 523(a)(6) was a clear abuse of discretion, and this case is remanded so that the bankruptcy court can rule on such claim.