In re Dennis Wayne **KICHLER** d/b/a **Covenant Fibers and Pamela Pauline Kichler, Debtors.**

Glenda McCREARY d/b/a Green Country Recycling Company, Plaintiff,

v.

Dennis Wayne **KICHLER** d/b/a Covenant Fibers, Defendant.

Bankruptcy No. 95–22590–7.
Adversary No. 96–6033.

United States Bankruptcy Court, D. Kansas.

Aug. 25, 1998.

---

Thomas N. Lane, Lisa L. Patrick, Merrick, Baker, Hufft & Strauss, P.C., Kansas City, MO, for Plaintiff.

Norris E. Greer, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, for debtor/defendant.

## MEMORANDUM OPINION [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

Defendant Dennis Wayne Kichler moved for summary judgment on Glenda McCreary's complaint to declare her claim nondischargeable under § 523(a)(4) of the Bankruptcy Code. This Code section covers fiduciary fraud, embezzlement, and larceny:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny....

McCreary's complaint alleges fiduciary fraud and embezzlement, but not larceny.

Under summary judgment procedure, McCreary cannot rely on her pleadings alone.[2] Summary judgment is proper "against a party who *fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof* at trial." [3] McCreary must respond to the motion with affidavits, depositions, answers to interrogatories, and admissions to support her complaint. If she fails to do so, summary judgment is proper because "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an *essential* element of the nonmoving party's case necessarily renders all other facts immaterial." [4] For the following reasons, the Court sustains Kichler's motion for summary judgment.[5]

### Background

Kichler's Statement of Uncontroverted Facts and the stipulations in the Final Pretrial Conference Order reveal that he bought and sold customers' products for a broker's commission under the proprietorship name "Covenant Fibers." Glenda McCreary dealt in recycled materials under

1. Plaintiff Glenda McCreary d/b/a Green Country Recycling Co. appears by her attorneys, Thomas N. Lane and Lisa L. Patrick of Merrick, Baker, Hufft & Strauss, P.C., Kansas City, Missouri. Debtor/defendant Dennis Wayne Kichler appears by his attorney, Norris E. Greer of Shughart, Thomson & Kilroy, P.C., Kansas City, Missouri.

2. Fed.R.Civ.P. 56(e).

3. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (emphasis added).

4. *See id.* (emphasis added).

5. The parties have stipulated in the pretrial order that the Court has jurisdiction over the parties and subject matter of the action; that venue in this district is proper; that all necessary and indispensable parties are joined; and that the Court may try this adversary proceeding to final judgment.

The Court finds independently of the stipulation that this proceeding is core under 28 U.S.C. § 157 and that the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D.Kan.Rule 83.8.5).

the proprietorship name "Green Country Recycling Company." The parties began a business relationship in December 1994 when Kichler undertook to sell McCreary's recycled materials to various mills around the country. In her answers to interrogatories, McCreary expresses the totality of her agreement with Kichler when she responds: "Mr. Kichler agreed to broker my paper for a $5.00 per ton brokerage fee."[6] Under this agreement, when Kichler made a sale, he would notify McCreary and she would send recycled materials directly to the buyer's mill. When the buyer paid Kichler, he would deduct his commission and send the balance to McCreary. During the two years before Kichler filed bankruptcy in December 1996, he had paid McCreary over $165,000 from sales of her materials, but he still owed her sales receipts of $65,657.50.

McCreary has not refuted this factual statement. But, she has supplemented it in her initial response to Kichler's motion and in an affidavit annexed to one of her reply documents. The thrust of McCreary's supplemental statement is that Kichler misrepresented the timing of payments he received from the various buyers of her materials. McCreary claims to have discovered the misrepresentation when she called the mills after learning of Kichler's financial troubles. When she called the mills hoping to have the payments redirected to her, the various mill representatives told her that they paid Kichler within two or three days after delivery of her materials. According to McCreary, Kichler had told her at the inception of their contract that he received payments from the buyers 30 days after delivery of the goods, not within two or three days after delivery.[7] McCreary does not identify the mills she called or the individuals with whom she spoke.

### Fiduciary Fraud

■ Fiduciary fraud under § 523(a)(4) requires McCreary to show two elements to prevent discharge of her debt: (1) that Kichler owed her a fiduciary duty, and (2) that Kichler committed fraud or defalcation.[8] Both elements are essential to her claim. Failure to establish either element demands entry of summary judgment for Kichler on the fiduciary fraud issue.

■ Although Kichler was acting as McCreary's broker in the transactions giving rise to the debt, and although that relationship creates a type of fiduciary duty, that type of duty is not the one required by § 523(a)(4). The fiduciary duty of an agent is not sufficient to establish a fiduciary relationship for purposes of § 523(a)(4).[9] "Unless there exists some additional fact, section 523(a)(4), as it relates to a debtor acting in a fiduciary capacity, does not apply to frauds of agents, bailees, [or] *brokers.*"[10] Rather, in the context of dischargeability, the term "fiduciary" is limited to relationships arising out of express or technical trusts.[11]

■ An express or technical trust may be created by an agreement that contains: (1) an explicit declaration by the parties of an intent to create a trust; (2) specific and definite property or subject matter of the trust; and (3) acceptance of the duties by the trustee.[12] The parties' agreement here is not

---

6. Answers to Defendant's First Interrogatories to Plaintiff attached to Memorandum in Support of Defendant's Motion for Summary Judgment filed December 5, 1996, at 2.

7. Affidavit attached as Exhibit A to Plaintiff's Reply Suggestions in Opposition to Defendant's Motion for Summary Judgment filed February 24, 1997.

8. *See Antlers Roof–Truss & Builders Supply v. Storie (In re Storie),* 216 B.R. 283, 286 (10th Cir. BAP 1997).

9. *See Fowler Brothers v. Young (In re Young),* 91 F.3d 1367, 1372 (10th Cir.1996).

10. 3 Collier on Bankruptcy ¶ 523.14[1][c] at 523–92 (15th ed.1996) (footnotes omitted) (emphasis added); *see also Hardesty v. Goseland (In re Goseland),* 114 B.R. 263, 268 (D.Kan.1990); *Kayes v. Klippel (In re Klippel),* 183 B.R. 252, 260 (Bankr.D.Kan.1995).

11. *See Fowler Brothers v. Young (In re Young),* 91 F.3d 1367, 1371 (10th Cir.1996); *Allen v. Romero (In re Romero),* 535 F.2d 618, 621 (10th Cir. 1976); *Kayes v. Klippel (In re Klippel),* 183 B.R. 252, 259 & n. 3 (Bankr.D.Kan.1995).

12. *See Moore v. Moore (In re Estate of Morton),* 241 Kan. 698, syl. ¶ 2, 769 P.2d 616 (1987); *Ingram v. Ingalls (In re Estate of Ingram),* 212 Kan. 218, syl. ¶ 4, 510 P.2d 597 (1973).

helpful to McCreary. Kichler merely agreed to broker McCreary's materials for a $5.00 per ton brokerage commission. There is no evidence that in forming their contract, either party expressed an intent to create a trust, or agreed that Kichler would hold specific property in trust.

 An express or technical trust may also be created by statute. When a statute creates the express or technical trust, it imposes the trust on specific identifiable property and sets forth specific fiduciary duties.[13] If the statute so provides, the intent of the parties to create an express or technical trust is irrelevant for purposes of § 523(a)(4).[14] In this instance, however, McCreary has not relied on any statute that would create an express trust. Nor has the Court found any statute that imposes fiduciary duties on Kichler. Because no express or technical trust exists, the requisite fiduciary duty required under § 523(a)(4) does not exist.

Since McCreary has failed to establish that Kichler was a fiduciary under § 523(a)(4), the Court need not address the question of his alleged fraud.

### Embezzlement

 The next question is whether McCreary has established embezzlement. Embezzlement in this context is "the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come."[15] Fraudulent appropriation requires "fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud."[16]

· As the definition states, fraudulent appropriation presupposes that a person has been entrusted with property belonging to another or that a person has come to lawfully hold property belonging to another. If Kichler is not such a person, he cannot be said to have embezzled. The question of entrustment or lawful possession of property depends on whether the facts indicate something more than a mere debtor-creditor relationship between McCreary and Kichler. Where the relationship between the parties is a debtor-creditor relationship, funds that come into the debtor's possession belong to him and therefore cannot be embezzlement.[17] When there is no requirement that the debtor segregate the funds, courts have consistently found the relationship to be merely that of debtor-creditor.[18] It is well established that "[t]he default by failure of defendant to remit sales proceeds ... is an *open account in debt* and *not an obligation for* ... embezzlement."[19]

 Here, the funds representing the disputed debt were sales proceeds that Kichler failed to remit to McCreary. Nothing in the parties' agreement required Kichler to segregate the funds in his possession. Those funds coming into Kichler's possession by way of this debtor-creditor relationship were his property and not the property of another. As a result, McCreary has presented no sup-

13. *See Hayton v. Eichelberger (In re Eichelberger),* 100 B.R. 861, 864 (Bankr.S.D.Tex.1989).

14. *See id.*

15. *Belfry v. Cardozo (In re Belfry),* 862 F.2d 661, 662 (8th Cir.1988), quoting *In re Schultz,* 46 B.R. 880, 889–90 (Bankr.D.Nev.1985); *see also Driggs v. Black (In re Black),* 787 F.2d 503, 507 (10th Cir.1986); *Schreibman v. Zanetti–Gierke (In re Zanetti–Gierke),* 212 B.R. 375, 381 (Bankr.D.Kan. 1997).

16. *Driggs v. Black (In re Black),* 787 F.2d at 507, quoting *United States Life Title Insurance Co. v. Dohm (In re Dohm),* 19 B.R. 134, 138 (N.D.Ill. 1982).

17. *See United American Ins. Co. v. Koelfgen (In re Koelfgen),* 87 B.R. 993, 998 (Bankr.D.Minn.

1988); *Great American Ins. Co. v. Storms (Matter of Storms),* 28 B.R. 761, 765 (Bankr.E.D.N.C. 1983); *see also Rentrak Corp. v. Cady (In re Cady),* 195 B.R. 960, 966 (Bankr.S.D.Ga.1996).

18. *See Rentrak Corp. v. Cady (In re Cady),* 195 B.R. at 966; *United American Ins. Co. v. Koelfgen (In re Koelfgen),* 87 B.R. at 998; *Commonwealth of Virginia Comm'n of Game and Inland Fisheries v. Myers (In re Myers),* 52 B.R. 901, 906 (Bankr. E.D.Va.1985); *Great American Ins. Co. v. Storms (Matter of Storms),* 28 B.R. at 765; *Snap–On Tools Corp. v. Rigsby (In re Rigsby),* 18 B.R. 518, 521 (Bankr.E.D.Va.1982).

19. *Commonwealth of Virginia Comm'n of Game and Inland Fisheries v. Myers (In re Myers),* 52 B.R. at 906, (quoting *In re Williams,* 7 B.C.D. 45, 47 (Bankr.W.D.Va.1980)) (emphasis added); *see also Snap–On Tools Corp. v. Rigsby (In re Rigsby),* 18 B.R. at 521.

port for an essential element of her embezzlement claim, and Kichler's alleged intent to appropriate property is immaterial to this decision.

The Court notes, however, that McCreary's affidavit alludes to hearsay information from unidentified persons at the unidentified mills that allegedly paid funds to Kichler. Except for this hearsay affidavit, there is no support for the theory that Kichler intended to defraud McCreary of the sales proceeds. Rather, the record shows that over the course of the parties' dealings, Kichler paid McCreary over $165,000.00 in sales proceeds. The most plausible inference is that Kichler defaulted on the remaining $69,657.50 because of the financial difficulties that brought him to this Court, not because of any intent to defraud McCreary.

Accordingly, summary judgment is entered for defendant-debtor Kichler and McCreary's claim against him is dischargeable. The foregoing discussion shall constitute findings of fact and conclusions of law under FED. R.BANKR.P. 7052 and FED.R.CIV.P. 52(a). A judgment reflecting this ruling will be entered on a separate document in compliance with FED.R.BANKR.P. 9021 and FED.R.CIV.P. 58.

IT IS SO ORDERED.